## No. 26483

## Robert D. Moen v. Alex Wilson, Warden, Colorado State Penitentiary

(536 P.2d 1129)

Decided June 23, 1975.

Rollie R. Rogers, State Public Defender, James F. Dumas, Chief Deputy, Lee J. Belstock, Deputy, for petitioner-appellee.

John P. Moore, Former Attorney General, J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Richard G. McManus, Jr., Assistant, for respondent-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

■ The constitutionality of the Interstate Agreement on Detainers is being tested in this case. 1969 Perm. Supp., C.R.S. 1963, 74-17-1.[1] The Agreement on Detainers, as we construe it, is constitutional.

The right of Robert D. Moen to have an "extradition-type" judicial hearing before he is returned to the State of Wisconsin to stand trial on burglary charges is the primary issue. Moen contends that the Interstate Agreement on Detainers is unconstitutional because it fails to provide prisoners with notice and the right to contest their transfer to another state for the purpose of trial. Alternatively, Moen asserts that the Agreement on Detainers must be interpreted to contain the same right to a hearing that is afforded a prisoner in testing the legality of transfer under the Uniform Criminal Extradition Act (hereinafter referred to as the "Extradition Act"). C.R.S. 1963, 60-1-3.[2]

■ Following *State ex rel. Garner v. Grey*, 55 Wis.2d 574, 201 N.W.2d 163 (1972), we construe our statute on detainers to include the same type of a hearing that is afforded by the Extradition Act. Ironically, Wisconsin was the first to recognize the right to notice and a hearing when a detainer, rather than extradition, was the means for securing a prisoner's presence to stand trial in a sister state.

In this case, Moen was convicted of burglary in Colorado and sentenced to the state penitentiary in December of 1968. At that time, Wisconsin authorities gave notice that they intended to file a detainer against Moen. No detainer was ever filed, and on July 12, 1970, Moen was paroled and was under parole supervision for more than a year. He then committed another burglary and was tried and convicted and once again sentenced to the Colorado penitentiary in December of 1972. Before sen-

---

[1] Now section 24-60-501, C.R.S. 1973.
[2] Now section 16-19-104, C.R.S. 1973.

tence was imposed, the Wisconsin authorities were contacted, and the Colorado authorities were advised that Wisconsin had no further interest in Moen. However, after Moen was sentenced and received at the Colorado penitentiary, Wisconsin filed a detainer requesting that Moen be held to answer burglary charges that were committed some time prior to 1968.

On December 6, 1973, Moen, through counsel, exercised the right set forth in articles IV(a) and IV(d) of the interstate compact on detainers and sent a letter to the Governor of Colorado in which he requested that the Colorado Governor not permit his removal from Colorado. 1969 Perm. Supp., C.R.S. 1963, 74-17-1.[3] Moen received no reply to his request or motion for review.

Prior to his motion to the governor, Moen filed a petition for a writ of habeas corpus and a motion for a restraining order to prevent the warden from complying with the Wisconsin detainer and request to return Moen to Wisconsin. Following a hearing, the trial judge denied habeas corpus relief on the ground that habeas corpus was the wrong remedy. The trial judge concluded that no allegation was made which would entitle Moen to habeas corpus relief, since he did not claim that he was illegally held or entitled to bail or release from the Colorado custody. However, the trial judge did enter a restraining order against the warden. The attorney general moved to vacate the restraining order. The motion was denied, and an appeal followed to this court.

The attorney general contends that Moen is not entitled to a hearing under the interstate compact because a hearing was not required by the Constitution or by the Agreement on Detainers. *U. S. Const.* amends. V and XIV; *Colo. Const.* art. II, §25; 1969 Perm. Supp., C.R.S. 1963, 74-17-1.[4] We believe that the trial court reached the right result in restraining transfer until a hearing could be held; it failed, however, to construe the Agreement on Detainers so that it could pass constitutional muster.

■ The Agreement on Detainers (1969 Perm. Supp., C.R.S. 1963, 74-17-1)[5] and the Extradition Act (C.R.S. 1963, 60-1-1 *et seq.*)[6] are both intended to serve the purpose of forcing a recalcitrant defendant who is no longer within the state where charges are pending to stand trial. Although both the extradition and the detainer statutes were enacted to effect interstate transfer of persons for trial, the Agreement on Detainers was limited to prisoners. Even the nomenclature is similar. *Compare* 1969 Perm. Supp., C.R.S. 1963, 74-17-1 art. II[7] (Agreement on Detainers) *with* C.R.S. 1963, 60-1-3[8] (Extradition Act).

Colorado has adopted the Agreement on Detainers, an interstate compact, which provides in article I that states which are party to a com-

---

[3]Now section 24-60-501, C.R.S. 1973.
[4]Now section 24-60-501, C.R.S. 1973.
[5]Now section 24-60-501, C.R.S. 1973.
[6]Now section 16-19-101, *et seq.*, C.R.S. 1973.
[7]Now section 24-60-501 art. II, C.R.S. 1973.
[8]Now section 16-19-104, C.R.S. 1973.

pact will agree "to encourage the expeditious and orderly disposition of such [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 1969 Perm. Supp., C.R.S. 1963, 74-17-1.[9] The article in question on this appeal is article IV, which outlines the procedures to be followed by a state when responding pursuant to the terms of the compact. Article IV (a) provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he had lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

■ The redress available to a prisoner under the compact is to submit a motion directly to the governor. In our view, the due process clause of both the Colorado and United States Constitutions requires more when a detainer is the basis for the transfer of a prisoner from one state to another. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Buffalo v. Tanksley,* 189 Colo. 45, 536 P.2d 827, *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *State ex rel. Garner v. Grey, supra;* Note, *Detainers and the Correctional Process,* 1966 Wash. U.L.Q. 417. A transfer which occurs without affording a prisoner the protective procedures in the Extradition Act tends to create distrust and suspicion of the entire criminal justice system.

■ Because the detainer constitutes a deprivation of liberty, a defendant serving a prison sentence is entitled to some protection under the due process clause, in addition to a motion to the governor. *State ex rel. Garner v. Grey, supra; cf. Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Ault v. Holmes,* 506 F.2d 288 (6th Cir. 1974); *Stone v. Egeler,* 506 F.2d 287 (6th Cir. 1974); *Newkirk v. Butler,* 499 F.2d 1214 (2d Cir. 1974).

■ Our decision in this case recognizes that the concept of liberty applies not only to those who are wholly free from the restrictive prison system, but also, in some respects, to those who are subject to it. We cannot say that the due process clause ceases to apply when a person is confined within prison walls. In so holding, we are effectuating the principles

---

[9]Now section 24-60-501, C.R.S. 1973.

of *Morrissey v. Brewer, supra,* which held that parolees receive limited due process protection in view of their status which was characterized as "conditional liberty." *See also Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (where the Court extended *Morrissey* to probation revocations).

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Wolff v. McDonnell, supra.*

■ Therefore, we must accommodate the interest of a prisoner in resisting a transfer and the governmental function which seeks to expedite the interstate compact on detainers. Judged by the standard announced in *Wolff v. McDonnell, supra,* a prisoner must be afforded the same rights which are afforded to a prisoner by the closely analogous Extradition Act. *Accord, State ex rel. Garner v. Grey,* 55 Wis.2d 574, 201 N.W.2d 163 (1972); *cf. Pippin v. Leach,* 188 Colo. 385, 534 P.2d 1193. Under section 111 of the Extradition Act, each prisoner is entitled to petition the district court for a writ of habeas corpus and to obtain a hearing in which extradition can be contested. C.R.S. 1963, 60-1-10.[10]

■ The Extradition Act and the uniform detainer compact, when applied to prisoners who are similarly situated, grant limited judicial review to contest transfer when the Extradition Act is used, but not under the provisions of the Agreement on Detainers. We do not believe that a prisoner's right to a hearing should turn on whether custody and transfer are sought by the demanding state under the Extradition Act (C.R.S. 1963, 60-1-1)[11] or by the receiving state under the interstate compact.[12] Constitutional rights should not hinge upon the selection of the so-called Uniform Act which is to be followed when the result is identical in both cases and when both statutes are used to effect the same result.

■ Consequently, we hold that in addition to the right of the prisoner under article IV(a) of the compact on detainers to petition or to file a motion with the governor relating to the transfer, limited review also exists in the courts. Prospectively, and not retroactively, a prisoner will have the right to challenge the procedures to determine whether the interstate compact and the Uniform Mandatory Disposition of Detainers Act (C.R.S. 1963, 39-23-8)[13] have been complied with. A prisoner will also be able to contest the transfer on the grounds afforded to those that are to be transferred pursuant to the Extradition Act (C.R.S. 1963, 60-1-3).[14]

---

[10]Now section 16-19-111, C.R.S. 1973.
[11]Now section 16-19-101, C.R.S. 1973.
[12]Now section 24-60-501 art. IV, C.R.S. 1973.
[13]Now section 16-14-101, C.R.S. 1973.
[14]Now section 16-19-104, C.R.S. 1973.

Thus, a prisoner does have the right, even when the detainer act is the basis for transfer for the purpose of trial (1) to contest his presence in the receiving state at the time the alleged crime was committed, (2) to question whether he is a fugitive from justice or whether the detainer documents are supported by either an indictment or an information supported by an affidavit establishing probable cause, and (3) to determine whether he is substantially charged with a crime under the laws of the receiving state. *State ex rel. Garner v. Grey, supra.*

However, in recognizing the limited right to judicial review which we have set forth in this opinion when the Agreement on Detainers provides the means for transfer, we specifically decline to extend the right of judicial review to speedy trial or to any rights other than those which we have enumerated. *See Buffalo v. Tanksley, supra.*

As to the speedy trial issue and the defendant's rights under the Sixth Amendment, those issues are properly left to the receiving state. *See Buffalo v. Tanksley, supra; ABA Standards for Criminal Justice, Speedy Trial* § § 2.3, 3.1.

For the reasons stated, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for a habeas corpus type hearing in accordance with the directions contained in this opinion.

MR. JUSTICE KELLEY concurs in the result.