**Roger L. McQUEEN, Appellant,**

v.

**Donald W. WYRICK, Warden, Missouri State Penitentiary, et al., Respondents.**

**No. 59320.**

Supreme Court of Missouri, En Banc.

Dec. 13, 1976.

---

Marvin Tofle, Columbia, for appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondents.

DONNELLY, Judge.

This appeal challenges the constitutionality of portions of the Agreement on Detainers (§ 222.160, Laws of Missouri, 1971, p. 278). Appellant is incarcerated in the Missouri State Penitentiary.

On October 12, 1972, at the request of the State of North Carolina, two detainers were placed against appellant at the Missouri State Penitentiary. On September 8, 1975, the State of North Carolina asked for temporary custody of appellant under the Uniform Agreement on Detainers. On September 11, 1975, appellant filed suit for declared judgment and injunctive relief in the Circuit Court of Cole County, Missouri. On October 15, 1975, that Court issued a temporary restraining order. On November 12, 1975, a hearing was had. At the conclusion of the hearing, the Court dismissed the petition and dissolved the restraining order. An appeal was taken and, on November 18, 1975, a temporary restraining order was issued by this Court.

The State of North Carolina seeks temporary custody of appellant under the provisions of Article IV of the Agreement on Detainers (§ 222.160, Laws of Mo.1971). Article IV reads as follows:

"1. The appropriate officers of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with paragraph 1 of article V of this agreement upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of the indictment, information or complaint shall have duly approved, recorded and transmitted the request; and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

"2. Upon receipt of the officer's written request as provided in paragraph 1 of this article, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. The authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

"3. In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"4. Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph 1 of this article, but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

"5. If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to paragraph 5 of article V of this agreement, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

There is no express provision in the Agreement on Detainers for judicial review of the proceedings for transfer.

The State of North Carolina, had it desired, could have sought custody of appellant under the provisions of the Uniform Criminal Extradition Act (§§ 548.011–548.-300, RSMo 1969). Section 548.051, RSMo 1969, reads as follows:

"1. When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings of his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.

."2. The governor of this state may also surrender on demand of the executive authority of any other state any person in this state who is charged in the manner provided in section 548.231 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily. Laws, 1953, p. 425, § 5."

The Uniform Criminal Extradition Act provides for judicial review of the proceedings for transfer. Section 548.101, RSMo 1969, reads as follows:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of *habeas corpus*. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state. Laws 1953, p. 425, § 10."

The determinative question presented is whether the denial to persons extradited under the Agreement on Detainers, supra, of those procedural rights which are afforded to persons who, at the request of a demanding state, are extradited under the Uniform Criminal Extradition Act, supra, would violate Article I, § 2 of the Constitution of Missouri, which guarantees all persons "equal rights and opportunity under the law * * *." We must hold that it could. " * * * The Legislature may pass laws applicable to a particular class of individuals, but such laws must bear equally upon all individuals coming naturally within the class * * *." *Ex parte French,* 315 Mo. 75, 83, 285 S.W. 513, 515 (banc 1926).

The inequality of rights and opportunity resulting from differing utilizations of § 222.160, supra, and § 548.051, supra, is

manifest. *For example,* Prisoner A and Prisoner B are incarcerated in the Missouri State Penitentiary. They are similarly situated. A detainer from North Carolina is lodged against Prisoner A. A detainer from Virginia is lodged against Prisoner B. The State of North Carolina seeks custody of Prisoner A under § 222.160. The State of Virginia seeks custody of Prisoner B under § 548.051. Prisoner B is, by statute, expressly given judicial review of the transfer proceeding in the asylum state. *People ex rel. Lehman v. Frye,* 35 Ill.2d 343, 220 N.E.2d 235, 237 (1966). Prisoner A is not, by statute, expressly given judicial review of the transfer proceeding in the asylum state.

■ In our opinion, the statutes must not be construed so as to deny to one individual the benefit of certain protective procedures and yet give them to another similarly situated. Accordingly, we must construe § 222.160 so as to make available to persons transferred under its provisions procedures similar to those afforded to persons transferred under § 548.051.

■ In *Moen v. Wilson,* 536 P.2d 1129, 1133 (Colo.1975), the Supreme Court of Colorado concluded:

"Thus, a prisoner does have the right, even when the detainer act is the basis for transfer for the purpose of trial (1) to contest his presence in the receiving state at the time the alleged crime was committed, (2) to question whether he is a fugitive from justice or whether the detainer documents are supported by either an indictment or an information supported by an affidavit establishing probable cause, and (3) to determine whether he is substantially charged with a crime under the laws of the receiving state."

We believe this limited right of judicial review, recognized in *Moen,* supra, should be made available in Missouri to detainees whose transfer is sought under the Agreement on Detainers. We make the following additional observations:

■ *First,* this limited judicial review should be made in the circuit court of the county in which the detainee is incarcerated.

*Second,* there should be no right of appeal from the determination made by said circuit court.

■ *Third,* the review procedure should be nonadversary in character and there is no requirement that it include the full panoply of adversary safeguards such as the rights to confrontation, cross-examination, and compulsory process for witnesses. Cf. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ *Fourth,* "in considering the sufficiency of the * * * [request documents submitted by the receiving state], it is not for the * * * [sending] state * * * to pass upon the quality, persuasiveness or weight of the evidential matter on the basis of which the * * * [request was made], for it is solely a question of law whether on the face of the papers accompanying the * * * [request] there was sufficient to say * * *'" that the *Moen* questions, supra, may be answered in the affirmative. *United States ex rel. Vitiello v. Flood,* 374 F.2d 554, 556 (2 Cir. 1967).

■ *Fifth,* the *Moen* questions, supra, are the only questions "that may be inquired into by a judicial tribunal." *State ex rel. Gaines v. Westhues,* 318 Mo. 928, 933, 2 S.W.2d 612, 615 (banc 1928). Appellant's assertion that he should not be transferred to North Carolina because he has been denied a speedy trial is an issue properly left to the State of North Carolina.

The judgment is reversed and the cause remanded to the Circuit Court of Cole County for a review in accordance with the directions contained in this opinion.

MORGAN, HOLMAN, HENLEY and FINCH, JJ., concur.

SEILER, C. J., concurs in separate concurring opinion filed.

BARDGETT, J., concurs in separate concurring opinion filed.

SEILER, Chief Justice (concurring).

I concur with the principal opinion as to Article IV of the Agreement on Detainers, but also believe something should be said about the claim of appellant regarding the operation of Article III of the Agreement. Article III affords a prisoner the means to dispose of a detainer, while Article IV affords a foreign state the means to obtain custody of a prisoner against whom it has lodged a detainer.

Appellant contends that in November 1972 he requested North Carolina to make a final disposition of the charges against him on which the detainers were based, but that despite his request, the detainers remained outstanding and it was not until September 1975 that North Carolina attempted to secure custody over him. Meanwhile, appellant was prevented from participating in furloughs, release programs, and outside job assignments. Respondent meets this contention by asserting that appellant did not make his request in proper written form.

Much has been written about the baleful effect of detainers. In *Smith v. Hooey,* 393 U.S. 374, 379, 89 S.Ct. 575, 578, 21 L.Ed.2d 607 (1969), the court quoted the former director of the Federal Bureau of Prisons, as saying:

" '[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.' "

Bennett, The Last Full Ounce, 23 Fed.Prob. 20, 21 (1959). These deleterious effects have been well documented.

" 'The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole, there is little hope for his release after an optimum period of training and treatment, when he is ready to return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated.' "

Dauber, Reforming the Detainer System: A Case Study, 7 Crim.L.Bull. 669, 671 (1971) quoting Council of State Government's Handbook on Interstate Crime Control 86 (rev.ed.1949). See also Wexler and Hershey, Criminal Detainers in a Nutshell, 7 Crim.L.Bull. 753 (1971); Note, Detainers and the Correctional Process, 1966 Wash. U.L.Q. 417.

To remedy the evils of the detainer system, the Missouri Legislature adopted the Agreement on Detainers and declared:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

Agreement on Detainers, Art. I, Sec. 222.-160, RSMo, Supp.1975.

The legislature provided further that "[t]his agreement shall be liberally construed so as to effectuate its purposes." Agreement on Detainers, Art. IX, supra.

In my opinion, by the undisputed facts before us,[1] the prison authorities are not

---

1. The trial court having sustained respondent's motion for a directed verdict at the close of

appellant's case, we must on appeal consider the evidence from a view most favorable to

complying with the spirit or the letter of § 222.160, and I would hold that the detainers under which North Carolina is attempting to proceed should long ago have been vacated.

According to appellant, when he arrived at the penitentiary in October 1972, the records officer asked him if he wanted final disposition of the charges against him and appellant said he did. The records officer told him to write a letter to that effect and also had him sign "Agreement on Detainers Form 1", which purports to inform the prisoner of the Agreement on Detainers. This document, however, by no means makes clear what the prisoner must do in order to be in literal compliance with the terms of Article III of the Agreement on Detainers.

Appellant did write a letter within 30 days to court officials in North Carolina where the charges were pending. He wrote: "I have signed the Agreement on Detainers pact to go to your county for trial last month (October) but I would further like to serve notice on you that I want to be brought to trial before 180 days. Or in the alternate remove the detainer from me here in Missouri. I am serving a life sentence here." He testified that he assumed the records officer meant for him to write the letter to the authorities in North Carolina. At various times following the lodging of the detainers appellant asked his caseworker and the assistant warden for help in disposing the charges against him, but received no word that he was proceeding incorrectly, until the present suit.

The form which appellant signed is highly ambiguous as to how the prisoner is to proceed. It informs him that he has the right to request the foreign state to proceed to a final disposition of the charges against him. It refers to his "request for final disposition". It states that if he desires such a request for final disposition, he is to notify the records office. Under the evidence, appellant did all this. He wrote the court in North Carolina and he informed the records officer that he wanted a final disposition of the North Carolina charges. Nowhere does the form state that the prisoner must make a written request to the records office.

In my opinion, if on remand the court finds the facts to be as appellant has testified, the detainers should be vacated.[2] See *Baker v. Schubin,* 72 Misc.2d 413, 339 N.Y. S.2d 360, 368 (1972), citing *United States ex rel. Jennings v. Pennsylvania,* 429 F.2d 522 (3d Cir. 1970); *Kane v. Virginia,* 419 F.2d 1369 (4th Cir. 1970); *United States ex rel. Watson v. Norton,* 335 F.Supp. 1324 (D.Conn.1971); *Caruth v. Mackell,* 7 Crim.L. Rep. 2414 (E.D.N.Y.1970); *Weiss v. Blackwell,* 310 F.Supp. 360 (N.D.Ga.1969), and *Lawrence v. Blackwell,* 298 F.Supp. 708, 714 (N.D.Ga.1969). I would not permit the prison officials to take refuge in the unclear, ambiguous form which was presented appellant. He made a substantial compliance with his part of the proceedings under Article III. He made it clear to North Carolina and to the prison authorities in Missouri that he wanted a final disposition of the charges against him. When we consider the stated purpose of the Agreement on Detainers, quoted above, the command of Article IX that it be liberally construed so as to effectuate its purposes, and the ease with which a detainer may be placed, together with the known fact that prison populations consist generally of poorly educated individuals and that literal compliance with the Agreement is highly technical, then, under the facts of this case, the detainers which have remained outstanding since 1972 should no longer be given any force or effect. The Missouri officials had verbal notice of appellant's desire to have the detainers removed and it would be unfair to allow them to defeat appellant's attempts through their omission.

appellant, take appellant's evidence as true, and reject evidence to the contrary.

2. While we cannot dismiss the indictments pending in North Carolina, there is no question but that we can order the detainers vacated and require prison officials to treat appellant as though no detainers are lodged against him.

BARDGETT, Judge (concurring).

I concur in the principal opinion and agree that the hearing the prisoner is now entitled to is that which is set forth therein. I have reached this conclusion because, on the evidence introduced in the circuit court hearing, I conclude that the prisoner did not comply with Article III of the Agreement on Detainers (sec. 222.160) and for that reason he is not entitled to have the North Carolina detainer quashed nor is he entitled to prevent extradition under the provisions of Article III.