Wesley MASSEY, Petitioner,

v.

The PEOPLE of the State of Colorado, and William Wilson, Superintendent, Colorado State Penitentiary, Respondents.

No. 80SA434.

Supreme Court of Colorado, En Banc.

Nov. 8, 1982.

As Modified on Denial of Rehearings Jan. 10, 1983.

J. Gregory Walta, Colorado State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for petitioner.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Litigation Section, Denver, for respondents.

DUBOFSKY, Justice.

The petitioner, Wesley Massey, appeals an order by the district court of Fremont County discharging a writ of habeas corpus. Massey, an inmate at the Colorado State Penitentiary, sought the writ to challenge a request for temporary custody under Article IV of the Interstate Agreement on Detainers, section 24–60–501, C.R.S.1973. We affirm the district court judgment.

A Nebraska arrest warrant issued on May 24, 1977 charged Massey with first-degree murder committed during a robbery in Omaha on May 23rd. Massey had escaped from the Colorado State Penitentiary on April 25, 1977; he was arrested in Colorado Springs on May 26, 1977 and subsequently returned to the penitentiary to serve a sentence of life imprisonment. On June 6, 1977, penitentiary authorities received a request from the chief of the Omaha police department to file a warrant for Massey's arrest as a detainer against his release from custody, and again, on November 30, 1977, penitentiary authorities received a similar request from the Douglas County, Nebraska, sheriff's office. Massey refused to sign a receipt for either of the detainers and did

not request a final disposition of the information as allowed under Article III of the Interstate Agreement on Detainers, section 24–60–501, C.R.S.1973.

Meanwhile, on June 14, 1977, the Governor of Nebraska requested extradition of Massey under the Uniform Criminal Extradition Act, section 16–19–101, *et seq.*, C.R.S. 1973 (1978 Repl.Vol. 8), and Massey sought habeas corpus relief from extradition. While the extradition proceedings were under way, the Douglas County prosecuting attorney sent a written request on April 17, 1978 to penitentiary authorities for temporary custody of Massey under the Interstate Agreement on Detainers. Massey testified that penitentiary officials advised him of the request, but that they took no action concerning it. Before the district court ruled on the extradition matter, the governor of Nebraska sent a letter on May 2, 1978 to the governor of Colorado terminating the extradition proceedings in favor of the proceeding under the Agreement on Detainers. However, the district court considering the extradition matter was not advised of the letter of May 2, 1978, and on June 19, 1978 ordered extradition. Massey appealed the extradition order and while the appeal was pending, the new governor of Nebraska attempted to reinstate the earlier extradition proceeding by letter of February 21, 1979. On January 28, 1980, we ruled in *Massey v. Wilson,* 199 Colo. 121, 605 P.2d 469 (1980) that Nebraska's withdrawal of the extradition demand terminated the extradition proceeding and that the letter of February 21, 1979, was not sufficient to reinstate it.

While the appeal of the extradition case was pending, officials at the penitentiary did not implement the request for temporary custody. Two days after our opinion in *Massey v. Wilson, supra,* the Douglas County prosecutor, Gregory M. Schatz, telephoned the records custodian at the penitentiary, Raymond E. Pittman, and asked that the request for temporary custody be processed.[1]

On April 10, 1980, the district court formally advised Massey of his rights under the Interstate Agreement on Detainers. On May 8, 1980, Massey filed a *pro se* petition for a writ of habeas corpus; the next day the district court ordered that the writ issue; and, on June 26, 1980, after a hearing, the district court discharged the writ. On August 8, 1980, the district court denied Massey's motion for a new trial but ordered that he not be released to Nebraska authorities pending appeal.

On appeal, Massey argues that Nebraska withdrew by implication its request for temporary custody and that a telephone call from the Nebraska prosecutor was not sufficient to reactivate the request; that the district court erred in refusing to allow into evidence a copy of the letter, dated February 21, 1979, from the governor of Nebraska to the governor of Colorado requesting that extradition be reinstated; and that the lack of protections in the Interstate Agreement on Detainers similar to those in the Uniform Criminal Extradition Act violates the equal protection clause of the United States Constitution.

The district court found that Nebraska had not withdrawn its request for temporary custody and that the appropriate authorities complied with Article IV of the Interstate Agreement on Detainers. Therefore, the district court discharged the writ of habeas corpus. We agree with the district court ruling. Because Massey did not present his constitutional argument to the district court, we do not consider it in affirming the judgment of the district court.

## I.

■ Massey specifically notes that he is not complaining about the delay in processing the request for temporary custody.[2] In-

---

1. Pittman noted at the bottom of Schatz' letter of April 17, 1978, the following:

   "1–30–80. Mr. Schatz requested by phone this date that his request for tempory [sic] custody be processed at this time. This has been processed due to subject fighting Governors Extradition Process until last week."

2. Although Massey was entitled under Article III of the Agreement on Detainers, section 24–

stead, he seeks to prevail on an argument similar to that which was persuasive in *Massey v. Wilson, supra.* There, we ruled that clear language in a letter written at the instance of the governor of Nebraska withdrew the extradition demand. *Id.* 605 P.2d at 471. Massey here argues that the February 21, 1979 letter from the governor of Nebraska attempting to reinstate the extradition proceeding withdrew by implication the detainer request for temporary custody because the letter made reference to the expediency of proceeding under the Uniform Criminal Extradition Act rather than the Agreement on Detainers. However, Massey offered no evidence of a specific withdrawal of the detainer request or evidence that Nebraska authorities requested the detainer process be held in abeyance because of extradition proceedings. Pittman's notation on the Douglas County prosecutor's written request indicates only that the penitentiary officials, of their own accord, delayed processing the request because of the pending extradition proceedings.[3]

When the request for temporary custody was received in April 1978, the district court had under advisement its ruling in the extradition proceeding. In June 1978, when the district court ordered Massey extradited to Nebraska, it stayed the extradition order pending appeal. It would not have been appropriate for the penitentiary officials to circumvent the stay of extradition by processing the request for temporary custody while the extradition appeal was pending. Because the detainer request had not been withdrawn by Nebraska officials, the re-

quest for custody could have been processed without the Nebraska prosecutor's telephone call. We conclude that Nebraska's request for temporary custody was not withdrawn and that the request was processed in compliance with the requirements of Article IV(a) of the Agreement on Detainers.

## II.

■ Massey next asserts that the district court's refusal to consider copies of the letters from the governors of Nebraska to the governor of Colorado discussed in *Massey v. Wilson, supra,* was prejudicial error.[4] The district court ruled that the letters were irrelevant to a determination of the propriety of Nebraska's request for temporary custody.

Massey argues that Governor Thone's letter implied that Nebraska was withdrawing its request for temporary custody and that the letter was relevant to whether there was a valid, outstanding request that Massey be returned to Nebraska. We agree with Massey that the letters were relevant to his effort to halt the proceeding under the Agreement on Detainers, but he has not demonstrated that the district court's refusal to consider the letters was prejudicial. The district court read *Massey v. Wilson, supra* during a recess from the hearing; therefore, the district court considered the text of Governor Exon's letter and a description of Governor Thone's letter. Massey does not claim that the text of Governor Thone's letter (set out in footnote 4, *supra* ),

60–501, C.R.S.1973 to request a speedy disposition of the Nebraska charge, he did not do so.

3. The Agreement on Detainers does not specify a time limit within which a prisoner must be offered or returned to the receiving state after receipt of a request for temporary custody.

4. The relevant text of the May 2, 1978 letter written at the request of Governor Exon of Nebraska was reproduced in *Massey v. Wilson.* The February 21, 1979 letter from Governor Thone of Nebraska requesting reinstatement of the extradition proceedings, was summarized in *Massey v. Wilson, supra.* The relevant text of Governor Thone's letter is as follows:

"Those papers were originally recalled because it was the belief of the local prosecutors in Nebraska that since Mr. Massey was convicted and sentenced in Colorado that a proceeding under the Detainer's Act would be more expedient than one under the Extradition Act.

Your supreme court, however, in the case of [*Moen v. Wilson,* 189 Colo. 85, 536 P.2d 1129,] decided that a person sought by the Detainer's Act is entitled to the same legal review as a person sought under the Extradition Act, therefore it is no longer more expedient to proceed under the Detainer's Act than the Extradition Act."

which the district court did not have before it in its entirety, was a withdrawal of the request for temporary custody. Massey's contention is only that the text of the letter supports an inference that Nebraska was abandoning its request for temporary custody. We do not believe that the language of the letter compels such an inference. The record before the district court supports its finding that as of January 30, 1980, Nebraska was still seeking Massey's presence under the Agreement on Detainers. We conclude that the district court's error in refusing to consider Massey's tendered exhibits was harmless.

### III.

Massey also claims that the Interstate Agreement on Detainers violates the equal protection clause of the United States Constitution because of the differences in procedure between it and the Uniform Criminal Extradition Act under which the governor of the demanding state must certify the documents which constitute the demand for extradition, and the governor of the asylum state must make certain determinations of fact and law before he issues and signs his governor's warrant. Massey asserts that the governors are more responsible in reviewing the rendition request than are the "appropriate officers," usually a prosecutor of the receiving state and a prison official of the sending state, who make the determination under the Interstate Agreement on Detainers.[5]

We decline to address Massey's constitutional challenge to the Agreement on Detainers because the only issue litigated at the habeas corpus hearing was compliance with the procedures of Article IV. Massey's counsel did not mention the constitutional challenge at the hearing, the district court did not address the constitutional issue in its ruling discharging the writ, and Massey's new trial motion did not raise the issue.

Massey filed a *pro se* petition for a writ of habeas corpus[6] alleging that the Interstate Agreement on Detainers denied him due process of law because it did not provide judicial review similar to that available in extradition proceedings. His petition also alleged that the Agreement denied him, a convicted felon imprisoned in the penitentiary, protection equal to that available to persons subject to extradition, including inmates of county or city jails.[7] A comparison of the *pro se* petition and Massey's arguments on appeal reveal that the equal protection challenge he seeks to have us address here is not the one raised in the habeas corpus petition.[8] We consider the

---

**5.** Additionally, we note that Article IV(a) of the Agreement provides that a written request for temporary custody must be approved, recorded, and transmitted by a court having jurisdiction of the indictment, information, or complaint pending against the prisoner, and that after receipt of the request for temporary custody, there must be a period of thirty days before the request is honored during which the governor of the sending state may disapprove the request for temporary custody either upon his own motion or upon motion of the prisoner.

**6.** The petition was prepared by another inmate who referred to himself as a "jail-house lawyer."

**7.** This constitutional attack on the Interstate Agreement on Detainers was answered in *Moen v. Wilson,* 189 Colo. 85, 536 P.2d 1129 (1975) where we ruled that the Agreement on Detainers must afford a prisoner at a habeas corpus hearing the right to challenge whether the procedures in the Agreement and the Uniform Mandatory Disposition of Detainers Act

have been complied with and to contest the transfer on the grounds afforded to those transferred under the Extradition Act. A prisoner resisting transfer under the Agreement on Detainers has the right

"(1) to contest his presence in the receiving state at the time the alleged crime was committed, (2) to question whether he is a fugitive from justice and whether the detainer documents are supported by either an indictment or an information supported by an affidavit establishing probable cause, and (3) to determine whether he is substantially charged with a crime under the laws of the receiving state."

*Id.* 536 P.2d at 1133. However, *Moen* specifically declined to extend the right of judicial review in a detainer case to any rights other than those enumerated.

**8.** On appeal Massey also alleges that the Interstate Agreement on Detainers violates the extradition clause of the United States Constitution, Art. IV, Sec. 2, Cl. 2 and the federal

constitutional challenge raised in the petition abandoned.

Because Massey's constitutional argument on appeal was not presented for determination by the district court, we will not consider it. C.R.C.P. 59(f); *Whittington v. Bray,* Colo., 613 P.2d 633 (1980); *Dorador v. Cronin,* 199 Colo. 85, 605 P.2d 53 (1980).

Judgment affirmed.

statutory provisions governing interstate rendition of prisoners. This issue is first raised on appeal, and we decline to address it. C.R.C.P. 59(f).