**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Christopher QUACKENBUSH, a/k/a Christopher Safford, Defendant-Appellee.**

**No. 82SA528.**

Supreme Court of Colorado, En Banc.

Sept. 4, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Diana L. DeGette, Sp. Deputy State Public Defender, Denver, for defendant-appellee.

ERICKSON, Chief Justice.

The prosecution brings this appeal challenging the dismissal of charges against the defendant, Christopher Quackenbush. The district court held that the defendant was not promptly advised by Washington officials that a detainer had been lodged against him by Colorado while he was incarcerated in the state of Washington, contrary to the provisions of the Interstate Agreement on Detainers. Section 24–60–501, 10 C.R.S. (1978). The prosecution asserts that the defendant's rendition to Colorado was sought and effectuated by traditional extradition proceedings and that the Interstate Agreement on Detainers has no application. We agree and therefore reverse and remand with directions to reinstate the charges against the defendant.

### I.

The defendant was charged in Weld County district court with three counts of burglary, two counts of theft, and separate counts of criminal mischief, motor vehicle theft, and escape. Before trial he left Colorado and went to Washington where, on October 2, 1981, he pled guilty to a burglary he committed in that state. He was sentenced to a term of ten years in the Washington Department of Corrections on January 22, 1982,[1] and was received at the Washington prison on February 11, 1982.

On February 3, 1982, the governor of Colorado issued a requisition for extradition of the defendant, based on the Weld County charges. The governor of Washington received the requisition on February 11, 1982 and issued an extradition warrant, which was subsequently lodged with prison officials in Washington.[2] On April 7, 1982, the defendant was advised by Washington prison officials that they had received an extradition warrant, and he was given a document entitled "Agreement on Detainers: Form II," which he signed. The document contained a waiver of extradition as a condition to his request for a final disposition of the Weld County charges "on the basis of which detainers have been lodged," ostensibly in exercise of his rights under article III of the Agreement on Detainers.[3] Officials in Washington sent the Weld County District Attorney's office an "Agreement on Detainers: Form IV" and offered to deliver temporary custody of the defendant. The Weld County district attorney executed an "Agreement on Detainers: Form VII" to obtain the defendant's custody, and he was returned to Colorado on September 21, 1982.

The defendant filed a motion to dismiss the Weld County charges on October 4, 1982, asserting that he had not been informed of the detainer against him in a timely manner as required by article III of the Agreement on Detainers. The prosecu-

---

1. January 22 is the date of the sentencing hearing but the judgment was entered on February 5. For purposes of calculating the delay in advising the defendant of his rights pursuant to the Agreement on Detainers, the district court gave the prosecution the "benefit of the doubt" and found January 22 to be the applicable date.

2. Pursuant to the stipulation of the parties, the district court found that the documents were received and lodged with the appropriate officials in Washington on February 11, 1982.

3. The Agreement on Detainers provides:

   The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

   Section 24–60–501, Article III(c), 10 C.R.S. (1978).

tion responded that the defendant's rights under the Agreement had not come into effect because the governor's extradition warrant was not a "detainer" and no detainer had been lodged against him. The district court found that while the proceeding originated under the extradition statute, a detainer, in the form of the Colorado and Washington governors' extradition warrants, had been lodged by Colorado with the Washington authorities on February 11, 1982. The court also found that there was no evidence that the defendant had been advised before April 7, 1982, that the detainer had been filed against him. As a result, the 55-day interval between the lodging of the detainer on February 11 and the advisement on April 7 violated the defendant's right to a "prompt" advisement of the detainer under article III(c) of the Agreement on Detainers. The Weld County charges were, accordingly, dismissed. *Romans v. District Court*, 633 P.2d 477 (Colo.1981).

## II.

The prosecution asserts that the Interstate Agreement on Detainers is inapplicable to a defendant whose interstate rendition is sought by traditional extradition procedures, even though the governor's warrant was mischaracterized as a detainer. We agree.

The purpose of the Interstate Agreement on Detainers is to encourage the expeditious and orderly disposition of charges pending in one state against a person imprisoned in another state. Section 24–60–501, Article I, 10 C.R.S. (1978); *Brown v. District Court*, 194 Colo. 225, 571 P.2d 1091 (1977). However, the Agreement on Detainers is not the exclusive method by which officials in one state may obtain custody of a defendant incarcerated in another state. *Moen v. Wilson*, 189 Colo. 85, 536 P.2d 1129 (1975); *Bailey v. Shepard*, 584 F.2d 858 (8th Cir.1978). The state retains the constitutional and statutory right to extradite a fugitive who has fled to a sister state. U.S. Const. art. IV, sec.

2; *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978); *Massey v. Wilson*, 199 Colo. 121, 605 P.2d 469 (1980).

Colorado has adopted the Uniform Criminal Extradition Act which specifies the procedures to be followed when extraditing fugitives from another state. *See* § 16–19–101 *et seq.*, 8 C.R.S. (1978 & 1983 Supp.). The Uniform Act provides that the governor may demand the return of a person charged with a crime in the state from the executive authority of any other state by issuing a warrant under seal. Section 16–19–123, 8 C.R.S. (1978). Once proceedings for the rendition of the defendant have been commenced by the issuance of the governor's extradition warrant, the warrant controls the nature of the subsequent proceedings. The extradition proceedings may then be terminated only by further gubernatorial action. *See* section 16–19–122, 8 C.R.S. (1978); *Massey v. Wilson*, 199 Colo. at 124, 605 P.2d at 471.

In this case, the rendition of the defendant to the state of Colorado was originally sought by the governor of Colorado under his extradition authority and was ordered by the governor of Washington's issuance of an extradition warrant. The fact that authorities in Washington mischaracterized the nature of the proceeding and caused authorities in Colorado to execute documents pursuant to the Agreement on Detainers to secure custody of the defendant does not alter the essential nature of the rendition as an extradition proceeding.

Prior to the issuance of the governors' warrants no detainer was lodged against the defendant. Such warrants do not constitute "detainers." *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Bailey v. Shepard*, 584 F.2d at 862. The governor's extradition warrant operates as a demand for the immediate custody of the defendant, while a detainer "merely puts the officials (in the asylum state) ... on notice that the prisoner is wanted in another jurisdiction for trial

upon his release from prison."[4] *United States v. Mauro*, 436 U.S. at 358, 98 S.Ct. at 1846. In filing the original documents, the authorities in Colorado intended to obtain immediate extradition of the defendant and did not attempt to obtain the advantages incident to the lodging of a detainer. *Mauro*, 436 U.S. at 362, 98 S.Ct. at 1848. In our view, the rendition of the defendant is governed by the provisions of the Uniform Extradition Act and he has no rights under the Agreement on Detainers.

 Since the rendition of the defendant is governed by the Extradition Act, we conclude that the dismissal of charges by the district court for failure to comply with the notification requirements of the Agreement on Detainers was erroneous. The fact that authorities in Washington mistakenly advised the defendant pursuant to the Agreement on Detainers does not entitle him to assert a remedy under that statute. The acts of authorities in Washington could not unilaterally change the Colorado extradition proceeding into a detainer action. Nor does the fact that the defendant was not immediately extradited or advised by the Washington authorities of his right to challenge the warrant in a habeas corpus proceeding warrant dismissal of the charges in Colorado.

We have held that neither procedural irregularities in the extradition process that occur in another state nor the manner in which the accused is brought before the court have any bearing on the court's capacity to adjudicate the charges brought against the defendant. *Yellen v. Nelson*, 680 P.2d 234 (Colo.1984); *see also Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Brown v. Nutsch*, 619 F.2d 758 (8th Cir.1980). Furthermore, the defendant in this case signed a valid waiver of extradition and suffered no prejudice as

a result of any irregularity in the extradition proceeding. Section 16–19–126(2), 8 C.R.S. (1978); *Pierson v. Grant*, 527 F.2d 161 (8th Cir.1975) (waiver of extradition not in compliance with Uniform Extradition Act is valid if voluntary). .

The judgment of the district court is reversed and remanded with instructions to reinstate the charges against the defendant.

---

**4.** Use of an extradition warrant does not implicate the dangers associated with the use of a detainer. A detainer operates only as notice to place a "hold" on a person in custody. A detainer creates a danger that it can remain against a defendant for a long period of time with no action being taken on the underlying charges. The prisoner's privileges and opportunities for rehabilitation may thereby be impaired. An extradition warrant, being a demand for custody of the defendant for immediate disposition of the outstanding charges, eliminates that risk. *See United States v. Mauro*, 436 U.S. at 359–60, 98 S.Ct. at 1846–47; *Bailey v. Shepard*, 584 F.2d at 862.