**Hugh BREWER, Plaintiff-Appellant,**

v.

**MOTOR VEHICLE DIVISION, DEPARTMENT OF REVENUE,
State of Colorado, Defendant-Appellee.**

**No. 84SA252.**

Supreme Court of Colorado,
En Banc.

June 9, 1986.

David R. Juarez, Randall J. Davis, Westminster, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Steven M. Bush, Asst. Atty. Gen., Denver, for defendant-appellee.

DUBOFSKY, Justice.

The plaintiff, Hugh Brewer, appeals from a judgment of the Jefferson County District Court affirming the revocation of his driver's license by the Department of Revenue, Motor Vehicles Division (department) under section 42-2-122.1, 17 C.R.S. (1984).[1] The plaintiff argues that insufficient evidence that he drove a vehicle within the meaning of section 42-2-122.1 was presented at the administrative hearing before the department, that the results of an intoxilyzer test were improperly admitted into evidence at the hearing, and that he was wrongfully denied the right to introduce evidence pertaining to the test results.

1. The plaintiff filed a notice of appeal of the district court's decision directly with this court under section 13-4-102(1)(b), 6 C.R.S. (1985 Supp.), presumably because he challenged the constitutionality of section 42-2-122.1, 17 C.R.S. (1984).

We affirm the judgment of the district court.

On July 24, 1983, the Broomfield Police Department received a complaint from a citizen about a car parked, with lights on and the engine running, in a cul-de-sac near the citizen's house. A police officer dispatched to investigate the complaint found the plaintiff's car parked in the middle of the street. The car's lights were on and its motor was running. The plaintiff was behind the steering wheel, asleep. When the police officer attempted to rouse the plaintiff the officer detected the odor of an alcohol beverage on the plaintiff's breath. The officer testified that the plaintiff, after leaving the car, had trouble standing without assistance. The officer then arrested the plaintiff and took him to the Broomfield police station.

The plaintiff agreed to submit to a breath test to determine his blood alcohol content. The arresting officer performed the test on a machine located at the police station, following the procedures indicated in a standardized checklist. The test results indicated that the plaintiff's blood alcohol content was .178 grams of alcohol per 210 liters of breath. Upon receiving the test results, the arresting officer revoked the plaintiff's driver's license.

At an administrative hearing on the revocation held at the plaintiff's request, the arresting officer testified to the circumstances of the plaintiff's arrest and to the administration and results of the intoxilyzer test. The plaintiff presented no evidence. He rested his defense on his assertion that there was insufficient evidence that he had actually driven his vehicle or that the intoxilyzer test had been administered within one hour of the alleged offense as required by section 42–2–122.1. He also argued that an insufficient foundation had been laid for the introduction of the intoxilyzer test results.

The hearing officer decided that the plaintiff, when found by the police officer, was "in operation and control" of his vehicle and therefore that he "drove a vehicle" within the meaning of section 42–2–122.1. The hearing officer also found that there was sufficient evidence that the intoxilyzer test had been administered within an hour of the commission of the offense. Accordingly, the hearing officer revoked the plaintiff's license for one year.

The plaintiff filed a petition for judicial review of the revocation in the district court on September 16, 1983. On April 27, 1984, the district court affirmed the hearing officer's findings and the revocation of the plaintiff's license. This appeal followed.

I.

■ The plaintiff's license was revoked under the authority of section 42–2–122.1, which provides in relevant part:

(1)(a) The department shall revoke the license of any person upon its determination that the person: (I) drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per 210 liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath. . . .

The plaintiff first contends that the district court erred in upholding the hearing officer's determination that he "drove a vehicle" within the meaning of the statutory language. As noted earlier, the hearing officer determined that at the time the plaintiff was found by the police officer he was "in operation and control" of his car and that by exercising such operation and control he "drove" the car within the meaning of section 42–2–122.1(1)(a)(I). The plaintiff contends that the statutory phrase "drove a vehicle" connotes only driving in the commonly understood sense of placing and controlling a vehicle in motion.

While the term "drove" is not statutorily defined, a definition of "driver" is provided by section 42–1–102(22), 17 C.R.S. (1984):

"Driver" means every person, including a minor driver under the age of eigh-

teen years and a provisional driver under the age of twenty-one years, *who drives or is in actual physical control of a motor vehicle upon a highway.*[2]

(emphasis added). It is logical to conclude that a person who "drove a vehicle" was at the time a "driver." While other constructions of the phrase "drove a vehicle" may be equally plausible, adopting the statutory language "actual physical control of a motor vehicle upon a highway" as the definition of the phrase is consistent with the purpose of preventing drunk driving and the remedial nature of section 42–2–122.1. *Cf. State, Dept. of Public Safety v. Juncewski*, 308 N.W.2d 316 (Minn.1981).

There are numerous cases in which persons in situations similar to the plaintiff's situation at the time he was found by the police officer were held to be in actual physical control of their vehicles upon a highway. *See* cases collected in 1 R. Erwin, *Defense of Drunk Driving Cases* § 1.01[1][c] (3d ed. 1986); Annot., 93 ALR 3d 7 § 15[a] (1979). In light of these cases and in consideration of the specific circumstances in which the plaintiff was found—asleep behind the wheel of a car parked in the middle of a street with the engine and lights on—we hold that the hearing officer properly determined that the plaintiff was in actual physical control of his car upon a highway when found by the police officer. Proof of such actual physical control was sufficient to establish that the plaintiff drove a vehicle upon a highway within the meaning of section 42–2–122.1.[3]

## II.

◼ The plaintiff next contends that the district court erred in determining that the results of the chemical analysis of his breath were properly considered by the hearing officer. Specifically, the plaintiff

argues that the test results should not have been admitted because they lacked an adequate foundation in the form of proof that the test was conducted in conformity with applicable rules and regulations.

The plaintiff bases his argument on section 42–4–1202(3)(b), 17 C.R.S. (1984), which provides that blood or breath tests for blood alcohol content shall be administered "in accordance with rules and regulations prescribed by the state board of health...." The department responds that the directive of section 42–4–1202(3)(b) is inapplicable to administrative proceedings for challenging the automatic revocation of a driver's license under section 42–2–122.1. Subsection (I) of section 42–2–122.1(1)(a), set out on p. 566, *supra,* directs the department to revoke the license of a driver whose blood alcohol content is above a certain amount. Subsection (II) of section 42–2–122.1(1)(a) provides that the department shall revoke the license of any person who "[r]efused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3)." The plaintiff's license was revoked under subsection (I). Although subsection (I) does not refer to section 42–4–1202(3), section 42–4–1202(3)(b) refers to blood or breath tests to be administered if the arresting officer has reasonable grounds to believe "that the person had been driving a motor vehicle in violation of subsection (1) or (1.5) of this section...." Subsection (1.5)(a) provides that "[i]t is a misdemeanor for any person to drive any vehicle in this state when the amount of alcohol in such person's blood is 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense, as shown by chemical analysis of such person's blood or

---

**2.** Section 42–1–102(33), 17 C.R.S. (1984), defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or the entire width of every way declared to be a public highway by any law of this state."

**3.** Because the plaintiff was within the coverage of section 42–2–122.1 when he was found by the police officer there is no question but that the intoxilyzer test was administered within one hour of the alleged offense. The record shows that the initial contact with the plaintiff was made at approximately 3:53 a.m. The intoxilyzer test was administered at 4:20 a.m.

breath." Although we do not know whether the plaintiff in this case was charged with a misdemeanor under subsection (1.5), the basis for the misdemeanor is identical to the requirement in section 42-2-122.-1(1)(a)(I) for automatic revocation of the plaintiff's license. Therefore, it makes sense to require the same blood or breath test under sections 42-4-1202 and 42-2-122.1 and to require that test to be administered in accordance with the health department rules and regulations. *See Aultman v. Motor Vehicle Division, Dept. of Revenue,* 706 P.2d 5 (Colo.App.1985).

■ Even if there was a deficiency in the evidence of compliance with board of health regulations, a question we do not decide, the intoxilyzer test results are not automatically inadmissible. In *People v. Bowers,* 716 P.2d 471, 475 (Colo.1986), we held:

> even though chemical testing of a driver's breath has not been conducted in strict compliance with a Board of Health rule, the test results may nonetheless be admitted if the trial court is satisfied that the proponent of such evidence has adequately established that the breath test actually administered was scientifically valid and reliable and was conducted by a qualified person using properly working testing devices.

In this case evidence that the intoxilyzer machine was in proper working order at the time of the test of the plaintiff's breath may be found in the administering officer's testimony that a sample run through the machine of a "simulator solution" of known alcohol content produced a readout on the machine within acceptable limits of error and in the readout itself which was submitted into evidence. Proof of a successful test with a simulator solution has been recognized as persuasive evidence of the proper functioning of an intoxilyzer machine. *See, e.g., People v. Drumm,* 122

Misc.2d 1051, 472 N.Y.S.2d 989 (Co.Ct. 1984). *See also* 3 S. Bernstein, *Criminal Defense Techniques* § 72.03[1] (1985).[4]

Additional evidence of the proper functioning of the intoxilyzer machine is found in the testimony of the police officer that to the best of his knowledge the machine was certified because "if there is a problem with it or if it's gone past its time that it has to go back to the Department of Health." A checklist indicating that the test had been conducted in conformity with applicable board of health regulations was admitted at the hearing. Finally, although the officer who conducted the test could not remember when he had been certified by the Department of Health to conduct intoxilyzer tests, his qualifications were established sufficiently by his testimony that he had been *re* certified to perform such tests within a matter of weeks from the date he administered Brewer's test.

The arresting officer's testimony coupled with proof of compliance with operational procedures established by the board of health is sufficient to establish that the test was properly conducted. *Aultman,* 706 P.2d at 6–7. We conclude on the basis of the evidence available to the hearing officer that there was an adequate foundation for the admission and consideration of the intoxilyzer test results.

### III.

■ The defendant points out that after his arrest he was not advised that he had the option to submit to a blood test or to refuse chemical testing altogether, nor was he warned of the legal consequences of such a refusal. He alleges as error the district court's determination that he was not entitled to such an advisement.

There is no recognized constitutional right to refuse to submit to a chemical test for blood alcohol content. *South Dakota*

---

**4.** The plaintiff points out that the officer who performed the test with the simulator solution had not personally prepared the solution. Questions about the preparation of a simulator solution may be relevant to the accuracy of an intoxilyzer test. Here, however, the plaintiff has not indicated with any specificity reasons to believe that the simulator solution was not properly prepared, or that the simulator solutions test was less than accurate. *See Aultman v. Motor Vehicle Division, Dept. of Revenue,* 706 P.2d 5 (Colo.App.1985).

*v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *People v. Gillet,* 629 P.2d 613 (Colo.1981). As we recognized in *People v. Gillet,* any right to refuse to undergo chemical testing and, by the same token, the right to select a particular type of testing, are statutory rights. *Gillet,* 629 P.2d at 615–616. It follows, therefore, that any requirement of advisement concerning the right to refuse or to choose a particular type of test must find its basis in statutory rather than constitutional law. In contrast to former section 42–4–1202(3), C.R.S. (1973) (the implied consent law), the current statutory scheme (the express consent law) does not provide for the right to refuse testing. Consequently, there is no requirement of an advisement about a nonexistent right.

The present version of section 42–4–1202, like its predecessor, gives the driver the choice of submitting either to a blood or breath test. The plaintiff's argument suggests that an advisement of this option is necessary for the option to be exercised. We note, however, that when the General Assembly wished to buttress with an advisement the statutory choice of tests under the implied consent law it did so explicitly. We must assume that the General Assembly was aware of what it was doing when it enacted the express consent law without including the requirement of an advisement about the choice between blood and breath tests.

■ As to the plaintiff's assertion that he should have been warned of the consequences of his refusal to submit to chemical testing, again such a warning is not required by statute. In *South Dakota v. Neville,* 459 U.S. at 564–66, 103 S.Ct. at 922–24, the United States Supreme Court rejected the contention that there is a due process right to a warning that the driver's refusal to take a blood alcohol test could be

used against him at trial.[5] However, the Court observed that the driver was "specifically warned ... that failure to take the test could lead to loss of driving privileges for one year.... Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id.* at 566, 103 S.Ct. at 924.

In this case, by contrast, there is no indication in the record that the plaintiff received warnings about any of the consequences of a refusal to take the test. There is thus room for arguing on the basis of *South Dakota v. Neville* that the plaintiff had a due process right to some type of explicit notice or warning that was abridged by the procedure employed here. The appropriate response to this argument in our view is that "[t]he requirements of due process in relation to the warnings are satisfied by the notice which is given licensees through publication of the statutes. A licensee to operate a motor vehicle on public highways is presumed to know the law regarding his use of the public highways." *Vigil v. Motor Vehicle Division of Dept. of Revenue,* 184 Colo. 142, 145, 519 P.2d 332, 334 (1974) (citations omitted). Section 42–4–1202(3)(e), 17 C.R.S. (1984), specifically forewarns all drivers that "[i]f a person refuses to submit to chemical tests as provided in this subsection (3) and such person subsequently stands trial for a violation of subsection (1) of this section, the refusal to submit to any test shall be admissible into evidence at the trial, and a person may not claim the privilege against self-incrimination with regard to admission of refusal to submit to a chemical test." Section 42–2–122.1(1)(a) provides that "[t]he department shall revoke the license of any person upon its determination that the person ... (II) Refused to submit to a chemical analysis of blood, breath, saliva, or urine as required by section 42–2–

---

5. On remand, the South Dakota Supreme Court held in *State v. Neville,* 346 N.W.2d 425 (S.D. 1984), that the admission of the test refusal violated the state constitutional protection of due process and the state constitutional protec-

tion against self-incrimination because of the failure to advise the driver that the refusal could be used against him at trial. *Cf. State v. Hoenscheid,* 374 N.W.2d 128 (S.D.1985).

1202(3)." These statutes give sufficient warning of the legal consequences of refusing to submit to a blood alcohol test to meet the requirements of due process.

We hold that there is no constitutional or statutory requirement that a driver who is asked to submit to a chemical test for blood alcohol content be informed that he has the right to refuse to undergo such testing, that he has a choice between breath or blood testing, or of the legal consequences that will attend refusal to submit to any tests.

### IV.

■ The plaintiff raises a number of other challenges to the revocation of his license under section 42–2–122.1. He argues on the authority of *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979), that he had an absolute right to have a breath sample preserved for independent testing and that this right was abridged by the determination of the hearing officer at the outset of the hearing that she would not consider evidence derived from such testing. In a related vein he asserts that he was denied due process by the hearing officer's statement that she would not consider evidence as to whether the plaintiff was under the influence of alcohol at the times relevant to the offense.

In *Garcia* we held that "procedures must be utilized which will cause a sample of the defendant's breath, taken at the time that a breath test is administered, be preserved and available to the defendant for separate testing as to blood alcohol content." *Id.* 589 P.2d at 926. Although *Garcia* was a criminal case, there is no reason why the rule established there should not be applicable to administrative driver's license revocation proceedings. In this case, however, there is no evidence that the requirement of *Garcia* was not fulfilled. The plaintiff does not indicate that a sample of his breath was not preserved for independent

testing or that his request for the sample was denied.[6]

The plaintiff's claims that he was wrongly denied the right to present evidence concerning the accuracy and the significance of the breathalyzer test are similarly deficient. As already noted, the plaintiff neither sought nor obtained the second sample of breath. He was therefore unable to make an offer of proof that would indicate how he expected to benefit from the introduction of such evidence. Nor did he make an offer of proof concerning the effect on him of his blood alcohol content. Without the benefit of such offers of proof, there is no basis for any claim that the hearing officer improperly refused to consider evidence.

The plaintiff challenges section 42–2–122.1 on the ground that it is unconstitutionally vague both with respect to the burden of proving the offense and with respect to procedural guidelines. The plaintiff did not raise this issue at the hearing or at the district court level; therefore, we will not consider it here. *Massey v. People*, 656 P.2d 658 (Colo.1982).

The judgment of the district court is affirmed.

ERICKSON, J., specially concurs.

VOLLACK, J., does not participate.

ERICKSON, Justice, specially concurring:

I concur in the result reached by the majority. However, I write separately to express my concern that the holding in part I of the majority opinion is too broad. I do not believe that the definition of "driver" contained in section 42–1–102(22), 17 C.R.S. (1984), should be used to determine whether a person "drove a vehicle" within the meaning of section 42–2–122.1(1)(a)(I), 17 C.R.S. (1984). The latter provides:

(1)(a) The department shall revoke the license of any person upon its determina-

---

**6.** While it might be better practice for the police to provide automatically a breath sample for independent testing, when the court in *Garcia* ruled that a sample must be made available to a

defendant, it contemplated a request for the sample. Thus, as the district court recognized, there is no basis for addressing the plaintiff's claim derived from *Garcia*.

tion that the person: (I) *Drove a vehicle* in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath....

(Emphasis added.) For purposes of the Uniform Motor Vehicle Law, the term "driver"

means every person, including a minor driver under the age of eighteen years and a provisional driver under the age of twenty-one years, *who drives or is in actual physical control of a motor vehicle upon a highway.*

§ 42–1–102(22), 17 C.R.S. (1984) (emphasis added). As the definition of "driver" includes one who drives *or* is in actual physical control of a motor vehicle, the definition is clearly more expansive than the phrase "drove a vehicle" contained in section 42–2–122.1(1)(a)(I). Brewer was obviously in "actual physical control" of his car and thus a "driver" within the meaning of section 42–1–102(22). However, one can easily imagine other factual scenarios in which a person might reasonably be considered to be a "driver" when, under the circumstances, he could not be said to have driven the motor vehicle. Had Brewer been parked on the side of the street with the engine off, he would have been in actual physical control of the car. But I would be reluctant to conclude that he "drove a vehicle" under such circumstances.

Although I disagree with the majority's reasoning, I am satisfied that Brewer "drove a vehicle" and therefore concur in the result. I reach that conclusion because of the particular facts in this case, not by employing the statutory definition of "driver." Here, Brewer was found parked in the middle of a cul-de-sac on a summer night. The investigating police officer observed Brewer asleep behind the steering wheel. The motor of Brewer's car was running and the lights were on. The offi-

cer did not actually see Brewer driving his car, but the circumstances clearly indicated that Brewer had in fact driven the vehicle in an intoxicated condition.

I agree with the majority that the statutes relating to drunk driving should be liberally construed to effectuate their purposes. However, we should avoid interpretations of the statutes which would impose the harsh penalties contained therein on persons who have not been apprehended under circumstances which support a reasonable belief that such persons have actually driven a motor vehicle under the influence of alcohol.