**MOTOR VEHICLE DIVISION, DEPARTMENT OF REVENUE, State of Colorado, Petitioner,**

v.

**Herschel E. WARMAN, Respondent.**

**No. 87SC288.**

Supreme Court of Colorado, En Banc.

Oct. 31, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric V. Field, Asst. Atty. Gen., Denver, for petitioner.

Chris Melonakis, Northglenn, for respondent.

QUINN, Chief Justice.

In *Warman v. Department of Revenue*, 745 P.2d 270 (Colo.App.1987), the court of appeals, in affirming a district court judgment that Herschel E. Warman should not lose his license for refusal to submit to chemical tests, held that Warman was not driving for purposes of the "express consent" statute, § 42–4–1202(3)(a)(I) and (II), 17 C.R.S. (1984), when he was seated, asleep or passed out, directly behind the steering wheel in the driver's seat of a motor vehicle parked in the parking lot of a convenience store with its motor running and its parking lights on. We granted certiorari to review the decision of the court of appeals, and we now reverse the judgment and remand the case with directions.

## I.

The essential facts are not in dispute. On March 4, 1985, at approximately 11:45 p.m. two police officers found Warman sitting in the driver's seat of a vehicle located in a parking lot directly in front of a convenience store. The motor was running, the parking lights were on, and Warman appeared to be asleep or passed out in the driver's seat.

One of the officers tapped on the window of the car, woke Warman, and asked him for identification. Warman refused to produce identification, claiming that he did not have to show the officer anything because he was not driving. The officer requested Warman to get out of his car, but he refused. Warman resisted the officer's efforts to remove him, but was eventually subdued and placed in the police vehicle. Warman's breath smelled of an alcoholic beverage, and his eyes were red and watery. The officers arrested Warman for driving under the influence of intoxicating liquor and resisting arrest.

On the way to the police station Warman stated to the officers that he knew he was drunk but that he had stopped in front of the store and called his son to pick him up. One of the officers advised Warman that he could choose between a blood test and a breath test under the "express consent" law. Warman refused both tests, claiming that he had not been driving. The arresting officer filed a report of Warman's refusal with the Department of Motor Vehicles (department).

At a license revocation hearing conducted on May 2, 1985, the hearing officer found that Warman was passed out or asleep behind the steering wheel of a motor vehicle with the engine running and the parking lights on and thus was "driving" a motor vehicle for purposes of the "express consent" statute, that the officers had reasonable grounds to believe that Warman was intoxicated and to request a chemical test of his breath or blood, and that Warman refused to submit to chemical testing. Pursuant to section 42–2–122.1(1)(a)(II), 17 C.R.S. (1984), the hearing officer revoked Warman's driver's license due to his refusal to submit to a chemical test.

Warman sought judicial review of the order of revocation. In reversing the order of revocation, the district court ruled that Warman's presence behind the steering wheel of the car did not subject Warman to the "express consent" statute because there was no evidence that he had driven his automobile in an intoxicated condition. The department appealed to the court of appeals, which affirmed the district court judgment on the basis that "there was insufficient evidence to establish that Warman was driving or in actual physical con-

trol of his vehicle while intoxicated." 745 P.2d at 271. We thereafter granted the department's petition for certiorari to consider whether Warman was "driving" a motor vehicle and thus subject to the terms of the "express consent" statute, § 42–4–1202(3)(a)(I) and (II), 17 C.R.S. (1984), when he was seated, apparently passed out or asleep, directly behind the steering wheel in the driver's seat of a motor vehicle which had its motor running and parking lights on and was located in the parking lot of a convenience store.

## II.

Section 42–2–122.1(1)(a)(II), 17 C.R.S. (1984), authorizes the department to revoke the license of any person "upon its determination that the person ... [r]efused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3)." This latter section, commonly referred to as the "express consent" statute, § 42–4–1202(3), 17 C.R.S. (1984), states in pertinent part as follows:

(a)(I) On and after July 1, 1983, any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be deemed to have expressed his consent to the provisions of this paragraph (a).

(II) Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state may be required to submit to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood or breath, if arrested for any misdemeanor offense arising out of acts alleged to have been committed while the person was driving a motor vehicle in violation of subsection (1) [driving under the influence and driving while ability

impaired] or (1.5) [driving with blood alcohol content of 0.15 or more] of this section.[1]

Since the "express consent" statute is explicitly applicable to any person who "drives" a motor vehicle, it follows that the department cannot revoke a license for refusal to submit to chemical testing of one's breath or blood unless the person was indeed "driving" a motor vehicle within the intendment of the "express consent" statute. The ultimate issue in this case, therefore, is whether Warman was "driving" the motor vehicle for purposes of section 42–4–1202(3)(a)(I) and (II), 17 C.R.S. (1984). Before answering this question, however, we must first consider whether the "express consent" statute applies to an area such as a private parking lot, which is not part of a publicly maintained right of way for vehicular traffic.

■ The "implied consent" statute as originally enacted in 1967 applied only to persons driving a motor vehicle "upon a public highway in this state." Ch. 356, sec. 2, § 13–5–30(3)(a), 1967 Colo.Sess.Laws 753. Under this statutory scheme, a person was deemed to have consented to chemical testing only when the person was in control of a motor vehicle located on a public way, and not when the vehicle was located in a private parking lot. *See Motor Vehicle Division v. Dayhoff*, 199 Colo. 363, 609 P.2d 119 (1980).[2] The "implied consent" statute was amended in 1981 to apply to "[a]ny person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state." Ch. 488, sec. 5, § 42–4–1202(3)(a), 1981 Colo.Sess. Laws 1933, 1935. The 1981 amendment thus expanded the coverage of the "implied consent" statute beyond public

1. In 1988 the General Assembly amended section 42–4–1202(3)(a)(II) to change the phrase "may be required to submit to a chemical test" to "shall be required to submit to a test or tests." Ch. 293, sec. 4, § 42–4–1202(3)(a)(II), 1988 Colo. Sess.Laws 1359, 1364.

2. When the "implied consent" statute was enacted in 1967, the term "driver" was defined as "every person who drives or is in actual physical control of a vehicle," § 13–1–1(34), 1963 C.R.S., and the term "operator" as "every person, other

than a chauffeur, who is in actual physical control of a motor vehicle upon a highway," § 13–1–1(35), 1963 C.R.S. The term "highway" was defined as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel; or the entire width of every way declared to be a public highway by any law of this state." § 13–1–1(20), 1963 C.R.S.

highways to all areas of the state. In 1983, the General Assembly repealed the "implied consent" statute and enacted in its place the "express consent" statute. Ch. 476, sec. 2, § 42–4–1202(3)(a), 1983 Colo. Sess.Laws 1631, 1632. The "express consent" statute applies to "[a]ny person who drives any motor vehicle upon the streets and highways and elsewhere throughout the state." § 42–4–1202(3)(a), 17 C.R.S. (1984). By incorporating the "elsewhere throughout the state" language in the "express consent" statute, the General Assembly has clearly manifested its intent to extend the application of the 1983 statute to any person who drives a motor vehicle anywhere in the state, whether on a public highway or, as here, a private parking lot.[3]

### III.

With this preliminary matter aside, we now address whether Warman was "driving" for purposes of the "express consent" provisions of section 42–4–1202(3)(a)(I) and (II), 17 C.R.S. (1984). Our prior decisions in *Brewer v. Motor Vehicle Division*, 720 P.2d 564 (Colo.1986), and *Smith v. Charnes*, 728 P.2d 1287 (Colo.1986), provide the controlling standard for resolving this question.

In *Brewer*, we held that a person whom the police found in an intoxicated condition seated in the driver's seat of a motor vehicle with motor running and parked in the middle of a street was "driving" a motor vehicle upon a highway and thus was subject to a license revocation for driving while intoxicated. In so holding, we rejected the argument that the term "driving" should be limited to "placing and controlling a vehicle in motion," 720 P.2d 566, and instead construed the term "driving a motor vehicle upon a highway" to mean being in "actual physical control of a motor vehicle upon a highway." 720 P.2d at 567.[4] In *Smith*, we rejected a claim that there was insufficient evidence of Smith's "driving" when the evidence established that he was discovered by a police officer in an intoxicated condition and either asleep or passed out in the driver's seat of a car parked with its motor running on an interstate exit ramp. Relying on *Brewer*, we held that "proof of actual physical control was sufficient to establish that [Smith] drove a vehicle within the meaning of section 42–2–122.1." 728 P.2d at 1292.[5]

■ Our prior decisions in *Brewer* and *Smith* compel the conclusion that Warman, who was in the driver's seat of an automobile which had its motor running and its parking lights on and was located in a private parking lot, was in actual physical control of the automobile and was thus driving a motor vehicle for purposes of the "express consent" provisions of section 42–2–1202(3)(a)(I) and (II), 17 C.R.S. (1984). A person who places himself behind the steering wheel of a motor vehicle with its engine

3. We recognize that the statutory scheme in effect on the date of Warman's refusal defines driver as "every person, including a minor driver under the age of eighteen years and a provisional driver under the age of twenty-one years, *who drives or is in actual physical control of a motor vehicle upon a highway.*" § 42–1–102(22), 17 C.R.S. (1984). As we emphasize in the text, however, the obvious purpose of the "express consent statute" is to include within its provisions anyone who drives or is in actual physical control of a motor vehicle *anywhere in the state,* and not merely to limit its terms to those who satisfy the definition of "driver" in section 42–1–102(22) by operating or controlling a vehicle *on a public highway.* Effective July 1, 1988, the General Assembly amended the definition of driver in section 42–1–102(22) 17 C.R.S. (1984), by deleting the phrase "upon a highway." Ch. 299, sec. 2, § 42–1–102(22), 1988 Colo.Sess. Laws 1379, 1382.

4. Since in *Brewer* the vehicle was on a public street, there was no issue as to whether Brewer's vehicle was upon a "highway." Rather, the point of contention in *Brewer* was whether Brewer "drove" a vehicle within the meaning of that term in section 42–2–122.1, 17 C.R.S. (1984), which requires the department to revoke the driver's license upon a determination that the person drove a motor vehicle with a blood alcohol content of 0.15 grams of alcohol per 100 milliliters of blood or 210 liters of breath. § 42–2–122.1, 17 C.R.S. (1984). Brewer's blood alcohol content was .178 grams of alcohol per 210 liters of breath.

5. Since Smith's vehicle was parked on an exit ramp of an interstate highway, the issue in *Smith,* as the issue in *Brewer,* was whether Smith "drove" the vehicle for purposes of the mandatory revocation provisions of section 42–2–122.1, 17 C.R.S. (1984), and not whether the driving occurred on a highway.

running is in actual physical control of the vehicle, since the vehicle can be put in motion by minimal physical activity, even if the activity might be unintentional. *See People v. Clark*, 47 Ill.App.3d 568, 5 Ill. Dec. 936, 362 N.E.2d 407 (1977) (person slumped over in driver's seat of vehicle with motor running and parked in private driveway was in actual physical control of vehicle); *Kansas City v. Troutner*, 544 S.W.2d 295 (Mo.App.1976) (person asleep in driver's seat of automobile with motor running in private parking lot is in actual control of vehicle); *Cf. State v. Lariviere*, 2 Conn.Cir. 221, 197 A.2d 529 (1963) (where person was asleep on front seat of motor vehicle, with its motor running and parked in middle of parking lot, prima facie case of "operating" a motor vehicle established); *People v. Collins*, 70 A.D.2d 986, 417 N.Y. S.2d 819 (1979) (ample circumstantial evidence of driving when person asleep behind steering wheel of automobile parked in private driveway with parking lights on and motor running). While a stationary automobile with its engine running is obviously less dangerous than a moving vehicle, it by no means can be considered a harmless object, whether the vehicle is on a public or private way or in some other area.

Because there is substantial evidence in the record as a whole to support the hearing officer's finding that Warman was "driving" his automobile within the intendment of Colorado's "express consent" statute, § 42–4–1202(3)(a)(I) and (II), 17 C.R.S. (1984), Warman's refusal to submit to a chemical test of his breath or blood, incident to his arrest for driving under the influence of intoxicating liquor, clearly warranted the revocation of his driver's license pursuant to section 42–2–122.-1(1)(a)(II), 17 C.R.S. (1984). The judgment of the court of appeals is accordingly reversed, and the case is remanded to that court with directions to return the case to the district court for the entry of a judgment affirming the administrative order of revocation.