19CA1356 Peo v Rhoades 12-16-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1356 El Paso County District Court No. 17CR6900 Honorable Larry E. Schwartz, Judge The People of the State of Colorado, Plaintiff-Appellee, v. James Manning Rhoades, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE DAILEY Dunn and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 16, 2021 Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Taylor Hoy, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, James Manning Rhoades, appeals the judgment of conviction finding him guilty of felony driving under the influence (DUI). We reverse and remand with directions. I. Background ¶ 2 Around 10:50 p.m. on December 6, 2017, Officer Jeremy Lux of the Colorado Springs Police Department responded to a report of a suspicious vehicle parked in a dirt lot. The caller, who lived near the lot, reported the vehicle had been in the lot for several hours. Officer Lux discovered Rhoades sitting in the driver’s seat of his flatbed Ford pickup with the truck’s motor running. ¶ 3 Upon questioning Rhoades, Officer Lux observed signs of intoxication, detained Rhoades, and called another officer, Officer Darin Beilfuss, to the scene to administer sobriety tests. At the scene, Rhoades admitted to being intoxicated and submitted to Horizontal and Vertical Gaze Nystagmus (HGN and VGN, respectively) roadside sobriety tests, failing each. The police arrested Rhoades, and about an hour later, he submitted to a blood 
2 draw, which returned a blood alcohol level of 0.241 grams per hundred milliliters — three times the legal limit.
1 ¶ 4 At trial, Rhoades testified that he had been parked in the lot since about 12:30 p.m. that day. Before stopping in the lot, he had driven his son to a neighboring town and, upon returning, purchased a bottle of liquor and drove to the lot. Rhoades was homeless at the time, although he gave Officer Lux a home address. He testified that he parked in the lot for lack of any other place to go, and that he and his son had been there drinking until shortly before Officer Lux arrived. According to Rhoades, he had not moved or driven the vehicle since arriving at the lot and had run the engine on and off throughout the day to stay warm. ¶ 5 Rhoades’s defense was that although he was intoxicated on December 6, he did not drive the vehicle at any time after he began drinking.
2 1 See § 42-4-1301 (6)(a)(III), C.R.S. 2021 (A person’s blood alcohol content of “0.08 or more . . . gives rise to the permissible inference that the defendant was under the influence of alcohol.”). 2 For DUI purposes, however, a person may “drive” a vehicle without moving it in any way. See People v. Swain, 959 P.2d 426, 427 (Colo. 1998) (“[P]roof of actual physical control of a vehicle was 
3 ¶ 6 The jury found Rhoades guilty of DUI. Later, the trial court held a separate hearing in which it found by a preponderance of the evidence that Rhoades had four prior DUI convictions, only three of which were required to elevate Rhoades’s DUI offense from a misdemeanor to a felony. See § 42-4-1301(1)(a), C.R.S. 2021. The court sentenced Rhoades to a term of three years of probation. ¶ 7 On appeal, Rhoades contends that the trial court reversibly erred by (1) finding that he had four prior DUI convictions by a preponderance of evidence rather than submitting the issue to the jury to decide beyond a reasonable doubt; (2) concluding that the evidence was sufficient to show that he had previously been convicted four times of DUI; and (3) excluding certain evidence and admitting certain evidence. ¶ 8 We address each contention in turn. sufficient to establish that [a person] ‘drove’ a vehicle within the meaning of [the alcohol-related driving offense statute section 42-4-
1301(1), C.R.S. 2021].”); Brewer v. Motor Vehicle Div., Dep’t of Revenue, 720 P.2d 564, 566-67 (Colo. 1986) (holding that driving is not limited to “placing and controlling a vehicle in motion”); People v. Valdez, 2014 COA 125, ¶¶ 11-12 (For DUI purposes, driving does not require “physical movement of a vehicle . . . .”). 
4 II. Felony DUI ¶ 9 Rhoades contends that under the felony DUI statute, the prior convictions are elements of the crime rather than sentence enhancers. Thus, he was entitled to have a jury determine beyond a reasonable doubt whether he had prior convictions for impaired-
driving offenses. We agree. ¶ 10 “DUI is ordinarily a misdemeanor, but it becomes felony DUI if it occurs after three or more convictions for DUI, DUI per se, or driving while ability impaired (DWAI).” People v. Carter, 2021 COA 29, ¶ 7 (citing § 42-4-1301(1)(a)). In Linnebur v. People, the supreme court held that the existence of three or more prior alcohol-related driving convictions is “a substantive element of felony DUI,” which must “be tried to a jury and found beyond a reasonable doubt”; it is “not a sentence enhancer to be found by the court.” 2020 CO 79M, ¶ 31. ¶ 11 Because the court, rather than the jury, determined that Rhoades had three or more prior alcohol-related driving convictions, Rhoades was denied his right to a jury trial on all the elements of felony DUI. See id. Consequently, Rhoades’s conviction for felony DUI must be reversed. 
5 III. Double Jeopardy /Sufficiency of Evidence ¶ 12 Rhoades next contends that the prosecution presented insufficient evidence to link him to the four prior convictions at issue in the case. ¶ 13 This issue is integrally intertwined with that of whether the prosecution would, under double jeopardy principles, be permitted to retry Rhoades for felony DUI. See McDonald v. People, 2021 CO 64, ¶ 61. Ordinarily, these issues would be reviewable on appeal. Id. ¶ 14 But in Linnebur, ¶ 32, the supreme court held that if “the prosecution seeks retrial of the felony DUI charge and Linnebur raises a double jeopardy defense, the trial court must rule on that defense.” ¶ 15 In People v. Tun, a division of this court declined to address a sufficiency of evidence issue like the one raised here because (1) inasmuch as the “prior convictions” issue was treated as sentence enhancer, rather than an element of felony DUI, the trial court had permitted the prosecution to proceed under a preponderance of evidence standard; and (2) double jeopardy was to be decided, in the first instance, by the trial court: 
6 Under Linnebur, before the People can [re-]try [the defendant] for felony DUI . . . , they must first demonstrate that retrial is not barred by constitutional double jeopardy limitations. Only if they prevail on this issue in the trial court can they attempt to prove, beyond a reasonable doubt, that [the defendant] has three prior DUI convictions. Because the trial court has not yet ruled on the double jeopardy challenge that will surely be raised on retrial and the People have not yet attempted to prove, beyond a reasonable doubt, that [the defendant] has at least three prior qualifying convictions, any opinion on these issues would be advisory only. We must avoid issuing such opinions. We therefore decline to address the sufficiency of the evidence of prior convictions . . . . 2021 COA 34, ¶¶ 21-22 (citations omitted). ¶ 16 Like the division in Tun, and for the same reasons, we too decline to address the sufficiency of evidence issue presented here.
3 IV. Evidentiary Issues Affecting Rhoades’s Misdemeanor Conviction ¶ 17 Rhoades contends that the misdemeanor DUI conviction must also be reversed because the court erroneously (1) allowed an officer 3 The supreme court currently has before it a case where, in circumstances similar to those present here, the trial court denied a motion to bar, on double jeopardy grounds, a second trial for felony DUI. See People v. Viburg, (Colo. No. 21SA153, May 11, 2021) (unpublished order). 
7 to testify about HGN and VGN testing without qualifying the officer to give expert testimony; and (2) precluded him from eliciting evidence as to the underlying reason for the police responding to the lot where Rhoades’s truck was. We disagree. ¶ 18 Because we review preserved challenges to a trial court’s evidentiary ruling for an abuse of discretion, People v. Reed, 2013 COA 113, ¶ 31, we will not overturn such a ruling absent a showing that it is either manifestly arbitrary, unreasonable, or unfair, People v. Castro, 854 P.2d 1262, 1265 (Colo. 1993), or based on an erroneous view of the law, People v. Moore, 226 P.3d 1076, 1081 (Colo. App. 2009). A. Expert versus Lay Evidence ¶ 19 An officer testified that he had utilized HGN and VGN roadside sobriety tests in assessing whether Rhoades was intoxicated. He explained to the jury what those tests were and what certain reactions signified. ¶ 20 “If the witness provides testimony that could be expected to be based on an ordinary person’s experiences or knowledge, then the witness is offering lay testimony. If, on the other hand, the witness provides testimony that could not be offered without specialized 
8 experiences, knowledge, or training, then the witness is offering expert testimony.” Venalonzo v. People, 2017 CO 9, ¶ 22. ¶ 21 Rhoades correctly points out that the officer’s HGN and VGN testimony is unquestionably expert, not lay, testimony. See Campbell v. People, 2019 CO 66, ¶¶ 23-31 (HGN testimony). ¶ 22 The question here, though, is whether the trial court admitted this evidence as lay rather than expert evidence. ¶ 23 As the officer attempted to explain one of the tests to the jury, the following occurred: OFFICER: So that test is, in layman’s terms, you stand very still, don’t move your head, and I move my finger back a few times and I watch your eyes. There’s very specific clues for alcohol impairment. DEFENSE COUNSEL: Objection, Your Honor. Improper opinion. Calls for expert testimony. THE COURT: Are you offering him as having specialized knowledge? PROPSECUTOR: Yes, Your Honor, in administering the roadside tests. THE COURT: Then it is proper opinion. PROSECUTOR: You can go ahead and answer. 
9 ¶ 24 Defense counsel made no further objections to this witness’s testimony. ¶ 25 We need not decide whether the court’s conclusion represented a determination that the officer was giving, much less was qualified to give, expert testimony. ¶ 26 Rhoades does not argue that the officer was unqualified to give expert opinion evidence on HGN and VGN testing.
4 He does, however, argue that the officer should have been endorsed as an expert prior to trial to allow him an opportunity to contest the officer’s testimony. ¶ 27 Rhoades did not argue in the trial court that the officer needed to have been endorsed as an expert. Nor did he argue he was surprised by, or needed a continuance to refute, the officer’s testimony. His “failure to request a continuance belies any claim that he was surprised or prejudiced by the detective’s testimony.” People v. Brown, 313 P.3d 608, 617 (Colo. App. 2011). 4 The officer testified that he has received training on nationally standardized sobriety testing — including VGN and HGN testing — in Michigan and Colorado and is certified to administer these tests. He must annually recertify and complete continuing education requirements. 
10 ¶ 28 Further, any error in admitting the officer’s testimony (as either lay testimony or as unendorsed or unqualified expert testimony) was harmless. ¶ 29 “[E]videntiary rulings are subject to the nonconstitutional harmless error standard.” People v. Carian, 2017 COA 106, ¶ 41. Under that standard, to avoid reversal the People must show that the error did not substantially influence the verdict or affect the fairness of the trial proceedings. James v. People, 2018 CO 72, ¶ 19. ¶ 30 An error substantially influences the verdict or affects the fairness of the proceedings where there is a reasonable probability that the error contributed to a defendant’s conviction. People v. Casias, 2012 COA 117, ¶ 61. “‘[A] reasonable probability’ does not mean that it is ‘more likely than not’ that the error caused the defendant’s conviction,” rather, “it means only a probability sufficient to undermine confidence in the outcome of the case.” Id. at ¶ 63 (quoting Krutsinger v. People, 219 P.3d 1054, 1060 n.3 (Colo. 2009)). ¶ 31 Any error committed by the trial court here was harmless for the same reasons identified by the supreme court in Campbell. 
11 There, the testimony of the officer who administered the defendant’s roadside sobriety tests was improperly admitted as lay witness evidence. Campbell, ¶¶ 23-26. The defendant’s defense in that case was that, although he admitted he had been drinking, he had only done so after being pulled over. Id. at ¶ 16. Here, Rhoades’s defense was also that, although he had been drinking, he had only done so after parking his vehicle. Similar to the circumstances in Campbell, • the evidence of Rhoades’s intoxication was “overwhelming”; • among other things, he had an odor of alcohol on his breath, bloodshot eyes, and slurred speech; • Rhoades was unable to stand up, for purposes of completing other roadside sobriety tests; • the officers on the scene found an empty liquor bottle in Rhoades’s vehicle; • during his conversation with the responding officer, Rhoades admitted he’d consumed alcohol; and • Rhoades’s blood alcohol test returned a BAC of .241 — well over the legal limit. 
12 See id. at ¶¶ 38, 40. ¶ 32 Because, as in Campbell, the evidence “overwhelmingly supported the jury’s determination that [Rhoades] drove while his ability was impaired by alcohol, . . . any error . . . was harmless.” See id. at 41. B. Responding to a Call About a Suspicious Vehicle ¶ 33 The prosecution elicited evidence that Officer Lux went to the lot where Rhoades’s truck was parked in response to a call involving a “suspicious” vehicle. Concerned that the jury might speculate about why Rhoades’s truck was considered a “suspicious” vehicle, Rhoades requested that he be allowed to elicit the reason why his vehicle was considered “suspicious.” The reason was the length of time (“several hours”) a citizen reported the truck as having been parked in the lot. The trial court denied Rhoades’s request because the evidence would’ve introduced inadmissible hearsay into the case. ¶ 34 In our view, the court erred by precluding Rhoades from eliciting the desired evidence. By presenting evidence that Officer Lux went to the lot to check out a “suspicious” vehicle, the prosecution opened the door to other evidence explaining the 
13 reason why the police were sent to check on a “suspicious” vehicle. See People v. Tenorio, 197 Colo. 137, 146, 590 P.2d 952, 958 (1979) (A party’s presentation of evidence can create for the opposing party “a right to explain or rebut any adverse inferences which might have resulted . . . .”). ¶ 35 And, contrary to the trial court’s perception, out of court statements evidencing the reason why police took certain action is not inadmissible hearsay. See People v. Barajas, 2021 COA 98, ¶ 52 (“An out-of-court statement is not hearsay if it is offered for some other purpose, such as to provide context for other actions, to show its effect on the listener, or to explain why a government investigation was undertaken.”); see also Tenorio, 590 P.2d at 958 (“None of the above statements by the officers were inadmissible hearsay. They were elicited only to establish the officers’ reasons for initially going to the park and for drawing their guns after arrival there.”); People v. Robinson, 226 P.3d 1145, 1151-53 (Colo. App. 2009) (officer’s references to informant’s out-of-court statements to explain the reasons for investigation are not hearsay). 
14 ¶ 36 The question, at this point, is whether the court’s error requires reversal. Under Crim. P. 52(a), we disregard a harmless error. ¶ 37 ‘“[T]he single most important factor’ in a nonconstitutional harmless error inquiry is whether the case was ‘close.’” Casias, ¶ 69 (quoting United States v. Ince, 21 F.3d 576, 584 (4th Cir. 1994)). [A]ppellate assessment of the “closeness” of an issue as it probably appeared to a jury is of course a highly judgmental process, involving much more of feel than of science. While assessing closeness necessarily requires looking to the probative force of other evidence tending to prove the issue, that . . . is not for the purpose of determining whether, if independently considered, that evidence would have sufficed to convict. The inquiry into “closeness” instead involves assessing whether the other evidence is not only sufficient to convict, but whether it is sufficiently powerful in relation to the tainted evidence to give “fair assurance” that the tainted evidence did not “substantially sway” the jury to its verdict. Id. (quoting Ince, 21 F.3d at 584). ¶ 38 As indicated above, this case was not “close.” In closing argument, Rhoades’s counsel conceded that Rhoades was severely impaired: “Ladies and gentlemen of the jury, we’re not here to 
15 contest that [Rhoades] was not drunk. He was drunk. He was wasted.” His defense, though, was that he drank after he had finished driving. ¶ 39 But, under the DUI statute, “driving” does not require “physical movement of a vehicle . . . .” Valdez, ¶¶ 11-12. It only requires “‘actual physical control’ of a vehicle.” Swain, 959 P.2d at 431 (citation omitted). ¶ 40 On cross-examination, Rhoades admitted that (1) he was drunk; (2) he was in control of his truck; and (3) his truck’s engine was running. In admitting these matters, Rhoades confessed to committing misdemeanor DUI. See Swain, 959 P.2d at 427, 431 (upholding a conviction for DWAI — a lesser included offense of DUI — of an intoxicated individual found “either asleep or passed out, in the front seat, . . . with his feet near the driver’s side door and his head resting towards the passenger’s side door,” with the “keys . . . in the ignition” and the engine turned off); see also Smith v. Charnes, 728 P.2d 1287, 1292 (Colo. 1986) (holding the defendant exercised actual physical control of the vehicle when he was intoxicated and found asleep or unconscious behind the wheel of a stopped vehicle, with the engine running and the lights on). 
16 ¶ 41 Under the circumstances, the exclusion of the neighbor’s report that the truck had been parked for hours was inconsequential. Why the neighbor called the police didn’t negate Rhodes’s testimony that established misdemeanor DUI. And, in any event, Rhoades himself testified that his truck had been parked in the lot for ten hours. ¶ 42 Under the circumstances, we conclude that there was no reasonable probability that the court’s evidentiary error contributed to Rhoades’s misdemeanor DUI conviction. Consequently, reversal of that conviction is not warranted. V. Disposition ¶ 43 The judgment of conviction of felony DUI is reversed and the matter is remanded to the trial court for further proceedings. If the prosecution seeks to retry Rhoades on the felony DUI charge and Rhoades raises double jeopardy issues, the trial court must rule on those issues and determine whether retrial is constitutionally permissible. If the People do not elect to retry Rhoades on the charge of felony DUI, the trial court shall enter a conviction and sentence for misdemeanor DUI. JUDGE DUNN and JUDGE KUHN concur.