24CA0217 Notarmuzi v CDOR 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0217
Douglas County District Court No. 23CV30479
Honorable Gary M. Kramer, Judge

Caron Notarmuzi,

Plaintiff-Appellant,

v.

Colorado Department of Revenue, Division of Motor Vehicles,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

OllomPrice Criminal Defense, Levi Price, Ross Ollom, Denver, Colorado, for
Plaintiff-Appellant

Philip J. Weiser, Attorney General, Danny Rheiner, Assistant Solicitor General,
Denver, Colorado, for Defendant-Appellee

¶ 1    Caron Notarmuzi appeals the district court's judgment affirming the revocation of her driver's license based on her refusal to take a breath or blood test.  We affirm.

I.    Background

¶ 2    At the license revocation hearing conducted by the Colorado Department of Revenue's Division of Motor Vehicles (the Department), the hearing officer heard evidence that would support the following findings.

¶ 3    Deputy Lindsey Queiser was on duty when she noticed Notarmuzi, who appeared to be intoxicated, crossing the parking lot of a bar while being supported by a friend.  As Notarmuzi reached her vehicle and got into the driver's seat, Deputy Queiser approached.

¶ 4    While Deputy Queiser spoke with the friend, Notarmuzi started the engine.  She stayed in the vehicle with the driver's door closed and the motor running for up to a minute.  Deputy Queiser then got her attention, and she stepped out of the vehicle.

¶ 5    Deputy Queiser expressed concerns about Notarmuzi driving while intoxicated.  Notarmuzi was agitated, yelling, and exhibiting more signs of intoxication.  She questioned the deputy and stated

1

that she intended to drive home. She eventually got back into the driver's seat. Deputy Queiser and a fellow officer immediately held Notarmuzi's arms until a third officer removed her keys from the ignition. The officers then arrested her.

¶ 6 Deputy Queiser advised Notarmuzi about Colorado's express consent statute. *See* § 42-4-1301.1, C.R.S. 2024. In relevant part, the express consent statute requires a person to take a breath or blood test when law enforcement has probable cause to believe that the person drove a motor vehicle while intoxicated. § 42-4-1301.1(2)(a)(I). Notarmuzi twice refused to conduct any tests, but she also said she didn't understand the advisements even though Deputy Queiser gave her multiple explanations. Eventually, Deputy Queiser warned Notarmuzi that she would note Notarmuzi was refusing testing, and after Notarmuzi acknowledged the warning, Deputy Queiser recorded her refusal on a notice of revocation. *See* § 42-2-126(5)(b)(I), C.R.S. 2024 ("A law enforcement officer . . . shall personally serve a notice of revocation on a person . . . based on a refusal . . . .").

¶ 7 Deputy Queiser transported Notarmuzi to a medical center and obtained a search warrant to draw a blood sample. She then

told Notarmuzi that a blood sample would be taken as part of the search warrant. According to Deputy Queiser's incident report,[1] Notarmuzi ultimately consented to the blood draw after Deputy Queiser explained the authority of the warrant, warned of additional criminal charges if Notarmuzi refused to comply with the warrant, warned that the warrant authorized force, and called other officers for assistance.

¶ 8　　The Department was notified that Notarmuzi had refused to submit to testing under the express consent statute, and it revoked her driver's license for one year pursuant to section 42-2-126(3)(c)(I). *See* § 42-4-1301.1(2)(a.5)(III); § 42-2-126(2)(h), (5)(a)-(b), (6)(a).

¶ 9　　Notarmuzi requested a hearing before a hearing officer from the Department to review the revocation determination. *See* § 42-2-126(7)-(8); *see also* § 42-2-126(2)(f). After the hearing, the hearing officer found, as relevant here, that (1) because Notarmuzi had been in the vehicle's driver's seat with the door closed and the engine

---

[1] The incident report was admitted into evidence as part of the express consent packet submitted to the Department. *See* § 42-2-126(5)(a), (8)(c), C.R.S. 2024.

running, she had driven the vehicle while intoxicated; and

(2) Notarmuzi had refused testing and never recanted her initial refusal even though she eventually consented to having her blood drawn under the warrant. The hearing officer therefore sustained the revocation.

¶ 10 Notarmuzi sought judicial review of that determination under section 42-2-126(9)(a), and the district court affirmed.

¶ 11 Notarmuzi now appeals the district court's order. She contends that the hearing officer had insufficient evidence to determine that she drove her vehicle while intoxicated because she was never in actual physical control of the car.[2] She also contends that there was insufficient evidence to support a finding that she refused testing because she recanted her initial refusal by agreeing to and cooperating with the blood draw.

## II.   Standard of Review

¶ 12 We may only reverse the Department's determination if it (1) "exceeded its constitutional or statutory authority"; (2) erroneously interpreted the law; (3) "acted in an arbitrary and capricious

---

[2] Notarmuzi doesn't contend that there was insufficient evidence of intoxication.

4

manner"; or (4) "made a determination that is unsupported by the evidence in the record." § 42-2-126(9)(b); *see also Neppl v. Colo. Dep't of Revenue*, 2019 COA 29, ¶ 8.

¶ 13     "In reviewing revocation proceedings, we stand in the same position as the district court." *Jansma v. Colo. Dep't of Revenue*, 2023 COA 59, ¶ 18. We may not disturb the hearing officer's findings unless they are "clearly erroneous [based] on the whole record." *Neppl,* ¶ 9 (quoting section 24-4-106(7)(b)(VII), C.R.S. 2024, which is made applicable by section 42-2-126(11)). "The credibility of witnesses, the weight to be afforded the evidence, and the resolution of conflicting evidence are factual matters solely within the hearing officer's province as the trier of fact." *Id.* If there is conflicting evidence, "the hearing officer's finding is binding on appeal" and we "may not substitute [our] judgment for that of the fact finder." *Glasmann v. State*, 719 P.2d 1096, 1097 (Colo. App. 1986).

### III.    Driving

¶ 14     Driving a vehicle while intoxicated is a necessary condition for revocation under the express consent law. *See Motor Vehicle Div. v. Warman*, 763 P.2d 558, 560 (Colo. 1988). In the express consent

context, driving means having "actual physical control" of a vehicle. *People v. Swain*, 959 P.2d 426, 431 (Colo. 1998). "Actual physical control" requires that the vehicle is "reasonably capable of being rendered operable." *People v. VanMatre*, 190 P.3d 770, 773 (Colo. App. 2008).

¶ 15    Notarmuzi argues that there was insufficient evidence to show she had actual physical control of the vehicle because she did not have "the chance to put the car in gear" when she first sat in the driver's seat. And the second time she sat in the vehicle, the officers physically restrained her. She contends that her inability to shift gears or move freely means that she couldn't render the vehicle operable. We aren't persuaded.

¶ 16    Deputy Queiser testified that when Notarmuzi first entered her car, she started the engine and remained in the driver's seat with the door closed for up to a minute with the engine running. This evidence supports the hearing officer's finding that she drove because even if a person's car is parked in a private lot, "[a] person who places [themselves] behind the steering wheel of a motor vehicle with its engine running is in actual physical control of the vehicle, since the vehicle can be put in motion by minimal physical

activity, even if the activity might be unintentional." *Warman*, 763 P.2d at 561-62.

¶ 17    We reject Notarmuzi's contention that she didn't make the vehicle operable — and thus didn't have actual physical control — because she didn't move the vehicle while intoxicated (to or from the parking lot) or put the car into gear. Moving her vehicle or shifting gears were not necessary to make the vehicle *capable* of being rendered operable. *See VanMatre*, 190 P.3d at 772 (holding that the express consent statute does not require "actual physical movement of a vehicle" or for the "vehicle [to] travel any particular distance"). Starting the engine while sitting in the driver's seat was enough to make the vehicle capable of being put into motion with minimal effort. *See Warman*, 763 P.2d at 561-62; *cf. Colo. Div. of Revenue v. Lounsbury*, 743 P.2d 23, 27 (Colo. 1987) ("The operation of a motor vehicle, for purposes of drunk driving statutes, can be as minimal as *merely starting the motor*, even though the vehicle is parked, or *starting the engine* and leaving the car idling in neutral.") (emphasis added) (citations omitted).

¶ 18    We further reject Notarmuzi's claim that the running engine was not determinative of whether she had actual physical control.

The hearing officer did not view the running engine in a vacuum. Rather, the hearing officer found the vehicle capable of being put into motion because (1) the engine was running *and* (2) it was running when Notarmuzi was "in the driver's seat with the driver's door closed."

¶ 19    Because the hearing officer's finding that Notarmuzi had actual physical control of her vehicle has record support, we discern no error. *See Neppl,* ¶ 9. And because Notarmuzi needed to "drive" only once for the express consent law to apply, we need not consider whether she was in actual physical control of her car the second time she entered it.

### IV.    Blood Draw

¶ 20    Notarmuzi next contends that there was insufficient evidence to show that she refused testing. We disagree.

### A.    Legal Principles

¶ 21    Once directed by a law enforcement officer to take a breath or blood test under the express consent statute, a person believed to have committed an alcohol-related driving offense "must cooperate" with the request so that "the sample of blood or breath can be obtained within two hours of the person's driving." § 42-4-

1301.1(2)(a)(III). If a person initially refuses to submit to a blood test or a breath test, the person may still reconsider their decision and express a willingness to take a test. *See Gallion v. Colo. Dep't of Revenue*, 171 P.3d 217, 222 (Colo. 2007). However, unless the person timely cooperates with the request for testing, their initial refusal will remain in effect. *See id.* at 222-23.

¶ 22 In determining whether there was a refusal, a hearing officer should apply an objective standard to "determine whether a driver's statements or behavior constituted an outright refusal or a refusal by noncooperation." *Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 16. A hearing officer must apply this same standard to a recantation of a refusal, considering "the driver's statements and behavior indicating willingness or unwillingness to take the test." *Gallion*, 171 P.3d at 222 (citing *Dolan v. Rust*, 576 P.2d 560, 562 (Colo. 1978)).

¶ 23 "If a hearing officer's finding on the refusal issue is based on application of the proper objective legal standards and resolution of conflicting inferences from the evidence, it is binding on review." *Haney*, ¶ 17.

B.    Analysis

¶ 24    To the extent Notarmuzi suggests that she didn't initially refuse testing and simply misunderstood the advisements, we conclude that the hearing officer's findings about her refusal are supported by the record.  While Deputy Queiser testified that Notarmuzi said she didn't understand Deputy Queiser's explanation of the express consent law, she also testified that Notarmuzi outright refused to conduct a test twice.[3]  *See* § 42-2-126(9)(b).

¶ 25    Notarmuzi next argues that, even if she initially refused testing, her later consent to the blood draw amounted to a recantation because it was an expression of her willingness to cooperate.  But Deputy Queiser's testimony shows that Notarmuzi agreed to allow the blood draw during a conversation about *executing the search warrant*, not about the express consent law.

---

[3] The hearing officer admitted into evidence Deputy Queiser's body camera video of her encounter with Notarmuzi.  When Notarmuzi cross-examined Deputy Queiser, some of her questions suggested that the video might be inconsistent with Deputy Queiser's testimony.  However, the video was not included with the record on appeal, so we presume it supports the hearing officer's findings. *See In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002) ("It is the appellant's responsibility to designate the record on appeal . . . .  [A]nd we presume that material portions omitted from the record would support the judgment of the trial court.").

10

And according to the deputy's incident report, Notarmuzi initially said she would not comply with the search warrant, even if it meant facing additional criminal charges. Deputy Queiser then warned Notarmuzi that the warrant authorized the use of a degree of force, but Notarmuzi still said that Deputy Queiser "would need to get as many people there as [she] would need [sic] for the blood draw to be conducted." Only after Deputy Queiser called for additional deputies and a lieutenant came and spoke with Notarmuzi did Notarmuzi finally relent and consent to the blood draw.

¶ 26    Given this context and Notarmuzi's uncooperative conduct, it was reasonable for the hearing officer to interpret Notarmuzi's consent as merely an agreement not to obstruct the execution of the search warrant. An agreement to not physically resist testing that has already been authorized by a search warrant is not a personal expression of willingness to timely cooperate with a request to obtain a blood sample. *See Gallion*, 171 P.3d at 222; *cf. McCampbell v. Charnes*, 626 P.2d 762, 764 (Colo. App. 1981) (upholding the hearing officer's finding that the driver's initial refusal remained unchanged because, although the driver's

11

attorney recanted on the driver's behalf, the driver never *personally expressed a willingness* to take a test).

¶ 27 Therefore, even if Notarmuzi's consent was susceptible of conflicting interpretations, it was within the hearing officer's purview to resolve the conflict by finding Notarmuzi had consented only to the execution of the search warrant, not to cooperate with testing in compliance with the express consent statute. *See Neppl,* ¶ 9. And because the record supports the court's finding, we cannot disturb it. *See Haney,* ¶ 17.

## V. Disposition

¶ 28 We affirm the judgment of the district court.

JUDGE FOX and JUDGE GOMEZ concur.